Mark P. Widoff, Consumer Advocate et al., Petitioners *v.* The Disciplinary Board of the Supreme Court of Pennsylvania et al., Respondents.

Argued June 4, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., ROGERS, BLATT, CRAIG, MACPHAIL and WILLIAMS, JR. Judge MENCER did not participate.

*Walter W. Cohen*, Consumer Advocate, with him *Daniel Clearfield* and *Craig Burgraff*, Assistant Consumer Advocates, and *Ashley Schannauer*, Legal Assistant, for petitioners.

*Howland W. Abramson,* Assistant Legal Counsel, with him *Charles W. Johns,* for The Disciplinary Board of the Supreme Court of Pennsylvania, respondent.

*Jonathan Vipond, III,* for Court Administrator of Pennsylvania, respondent.

OPINION BY JUDGE BLATT, October 2, 1980:

The petitioner, the Office of Consumer Advocate, seeks a declaratory judgment that Disciplinary Rule 7-107(H) of the Pennsylvania Code of Professional Responsibility is unconstitutionally infirm as unduly vague and overbroad.

The Office of Consumer Advocate was legislatively established in 1976 as an arm of the Department of Justice to represent consumers of public utility services in proceedings before the Pennsylvania Public Utility Commission (Commission) and before any other agency or court in regard to any matter which involves regulation by the Commission. Article IX-A of the Administrative Code, Act of April 9, 1929, P.L 177, *as amended,* 71 P.S. §309-1 et seq. The respondent, the Disciplinary Board of the Supreme Court of Pennsylvania (Board), was appointed by the Supreme Court to investigate complaints of unethical conduct by members of the Pennsylvania Bar and to recommend to the Supreme Court that it dismiss the complaint or take appropriate disciplinary action. Pa. R.D.E. 205.

In May of 1978, a complaint was filed with the Board which alleged that Mark P. Widoff, the former Consumer Advocate and a member of the Pennsylvania Bar, had made public statements during the pendency of Commission hearings which violated DR

7-107(H) of the Pennsylvania Code of Professional Responsibility.[1] The statements complained of included quotes in a newspaper article and two press releases by the Consumer Advocate which concerned pending Commission hearings in which Mr. Widoff was participating in his official capacity. Ultimately, the Board dismissed the complaint on the grounds that Mr. Widoff had made good faith efforts to comply with the Rule and had believed that he had done so. The Board went on to caution Mr. Widoff, however, that he was nonetheless subject to the restrictions of the Code of Professional Responsibility as an attorney who was also the Consumer Advocate and that disciplinary charges would be brought against him for any future public statements that would be "reasonably likely to interfere with a fair hearing."

---

[1] The Supreme Court of Pennsylvania pursuant to its authority to supervise the conduct of attorneys as officers of the Court under Article V, Section 10(c) of the Constitution of Pennsylvania, adopted DR 7-107(H) of the Code of Professional Responsibility on February 27,1974. The Rule provides:

> During the pendency of an administrative proceeding, a lawyer or law firm associated therewith shall not make or participate in making a statement, other than a quotation from or reference to public records, that a reasonable person would expect to be disseminated by means of public communication if it is made outside the official course of the proceedings and relates to:

> (1) Evidence regarding the occurrence or transaction involved.

> (2) The character, credibility, or criminal record of a party, witness, or prospective witness.

> (3) Physical evidence or the performance or results of any examinations or tests or the refusal or failure of a party to submit to such.

> (4) His opinion as to the merits of the claims, defenses or positions of an interested person.

> (5) Any other matter reasonably likely to interfere with a fair hearing.

We must first resolve whether or not an "actual controversy" exists here in order to justify a declaratory judgment as to the constitutional validity of DR 7-107(H). The Consumer Advocate maintains that the Rule restricts not only his personal right to speak under the first amendment but also the Consumer Advocate's duty to make public statements pursuant to his legislative authority as the representative of public utility customers, and it is asserted that the vagueness and breadth of DR 7-107(H) forces the Consumer Advocate and his assistants either to refrain from constitutionally protected comment or to risk disciplinary action. We realize, of course, that the Declaratory Judgments Act, 42 Pa. C. S. §7531 et seq., is remedial legislation and should be liberally construed and applied. Section 7541 of the Declaratory Judgments Act, 42 Pa. C. S. §7541. Furthermore, "[t]he stated purpose of the Declaratory Judgments Act . . . is to settle and afford relief to any person from uncertainty and insecurity with respect to right, status and legal relations affected by a statute." *Snider v. Shapp,* 45 Pa. Commonwealth Ct. 337, 346, 405 A.2d 602, 607 (1979). We believe, therefore, that the Consumer Advocate's dilemma here presents the existence of an actual controversy between the exercise of free speech rights and the threat of disciplinary action. The petitioner has already received warning that past expressions, which the Consumer Advocate considered to be officially required of him, were questionable under the disciplinary rules and that any such statements by him in the future will result in harsh treatment. A liberal construction of the Declaratory Judgments Act allows a resolution of the Consumer Advocate's "uncertainty and insecurity with respect to his rights", and such construction will be given.

As to the petition before us, the petitioner has requested a declaration that the provisions of DR 7-107 (H) are overly broad and unduly vague and, therefore, that his right of free speech is unconstitutionally restricted thereby. It is argued that paragraphs (1)-(4) of DR 7-107(H) impose limitations on the Consumer Advocate's speech which are greater than necessary to protect the fairness of administrative hearings. It is argued, moreover, that DR 7-107(H) (5), which generally prohibits statements by attorneys as to "any other matter reasonably likely to interfere with a fair hearing" is not only too restrictive but that it is also unconstitutionally vague. *Hirschkop v. Snead*, 594 F.2d 356 (4th Cir. 1978); *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242 (7th Cir. 1975) *cert. denied sub nom. Cunningham v. Chicago Council of Lawyers*, 427 U.S. 912 (1976).

First amendment rights such as the right to free speech, of course, are entitled to powerful constitutional protection, but they are not absolute, and they may be limited by governmental action. The government, however, may institute such restraints only if they are meant to further a legitimate public interest unrelated to suppression of expression and if the strictures imposed are no greater than necessary to protect that governmental objective. *Procunier v. Martinez*, 416 U.S. 396 (1974); *Hirschkop v. Snead*, *supra*.

Initially, therefore, we must identify the nature of the governmental interest in this case and then establish the degree to which first amendment freedoms may legitimately be impinged if at all. In conflict here are the rights of free speech, applicable to the Commonwealth through the 14th amendment,[2] and

---

[2] *See, e.g., Virginia State Board of Pharmacy v. Virginia Consumer Council*, 425 U.S. 748 (1976).

the 14th amendment due process guarantee of a fair trial which applies to all quasi-judicial administrative hearings.[3]

There can be little dispute that the courts of the Commonwealth have not only the right but the obligation to ensure the fairness of their judicial proceedings, and it has been held that in the event of a conflict between the due process clause of the 14th amendment and the first amendment, the right to a fair trial, "the most fundamental of all freedoms," must take precedence. *Hirschkop v. Snead, supra* at 363; *Chicago Council of Lawyers v. Bauer, supra* at 248 (quoting *Estes v. Texas,* 381 U.S. 532, 540 (1965)). Moreover, a fair trial requires that the standards of both procedural and substantive due process must be satisfied, and due process is not merely an overall concern with the integrity of the judicial process but a right which is personal to the parties participating in the hearing. The due process rights of the parties to have a fair hearing must then be balanced against the right of free speech retained by attorneys who act as counsel in the same administrative proceedings.

For centuries the fiduciary relationship of an attorney in relation to the judicial process has justified special regulation of his conduct. He is not and cannot be merely a blind advocate for his client; he is an officer of the court with a duty to himself, to the legal community and to the public to promote the integrity of the tribunal in which he is a participant and to avoid conduct that would be likely to prejudice that forum. His function requires him to represent his client in adversarial inquiries *in the courtroom* and *not* on the streets. He has a status which is par-

---

[3] *See, e.g., Withrow v. Larkin,* 421 U.S. 35 (1975).

ticularly subject to special regulation, and, although we agree that an attorney does not forfeit his first amendment rights merely because he is an advocate in a particular legal proceeding, *Wood v. Georgia,* 370 U.S. 375 (1962), we believe that, in the balance, an attorney's personal rights cannot be allowed to supersede the constitutional protection to a fair trial possessed by both his client and by any and all other parties concerned.

Because we believe, therefore, that free speech may be restricted in favor of a fair trial, we must still determine whether DR 7-107(H) limits free expression to a degree that is greater than necessary to assure an impartial tribunal. The petitioner contends that the Rule is overbroad and therefore prohibits comments which would not impair the fairness of an administrative hearing. Additionally, the petitioner argues that the wording of the Rule is vague and does not place a speaker on notice as to what expressions are prohibited and therefore imposes a chilling effect upon him which inhibits remarks entitled to first amendment protection.

### OVERBREADTH

We do not believe that DR 7-107(H) is overbroad. Our Supreme Court, in the promulgation of the disciplinary rules, has not required that all sources of public information maintain absolute silence in regard to administrative hearings.[4] The proscription here applies only to lawyers and law firms associated with the proceedings and is limited in time to the pendency of the hearing. Nor can we agree with the assertion that the only speech by an attorney which

---

[4] Indeed, such a "gag" on newspapers would be unconstitutional. *Nebraska Press Association v. Stuart,* 427 U.S. 539 (1976).

is appropriately restricted is that which creates a "clear and present danger" of prejudice to the fairness of an administrative hearing and that the standard of DR 7-107(H)(5) proscribing comments which are "reasonably likely to interfere with a fair hearing" is overbroad. *See Chicago Council of Lawyers v. Bauer, supra.* We must, in fact, uphold the "reasonable likelihood" language as appropriately narrow.[5] As indicated earlier, in the event of a conflict between the due process right to a fair trial and freedom of speech, the due process clause must prevail. *Hirschkop v. Snead, supra; Chicago Council of Lawyers v. Bauer, supra.* Moreover, protection of the right to a fair trial requires more than just the right to appeal a decision allegedly influenced by prejudicial conduct:

> [W]here there is a *reasonable likelihood* that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it. . . . If publicity during the proceedings threatens the fairness of the trial, a new trial should be ordered. But we must remember that reversals are but palliatives; the cure lies in those remedial measures that will prevent the prejudice at its inception. *The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences.* (Emphasis added.)

*Sheppard v. Maxwell,* 384 U.S. 333, 363 (1966). Courts cannot be expected to devise ad hoc rules for each case, and reliance on post-verdict relief would be in-

---

[5] Since we hold that "reasonable likelihood" is the proper language, we will accept for the purposes of this opinion the petitioner's characterization that as between the two standards, "clear and present danger" would allow a greater amount of expression.

effective. It must fall then to the courts to establish
*general* rules to regulate conduct *reasonably likely* to
prejudice a fair trial. An attempt to distinguish the
"reasonable likelihood" standard of the *Sheppard*
case on the basis that the language there was designed
to protect the individual rights of a defendant in a
criminal trial does not persuade us nor does the argu-
ment that free speech rights are entitled to the
"broader" protection of the "clear and present dan-
ger" test in regard to the administrative proceedings
with which we are concerned. We believe that the
"reasonable likelihood" language defines the degree
of constitutional protection necessary to ensure the
fairness of *any* tribunal. Attorneys, therefore, must
temper whatever they say to avoid any statement
which would be reasonably likely to prejudice the de-
cision *in the forums concerned.*

It is also argued that the provisions of DR 7-107
(H)(1)-(4) are overbroad in that they specifically
prohibit *all* public statements by an attorney involved
in an administrative hearing in regard to any matter
related to the evidence, the credibility or the char-
acter of the witnesses or the attorney's opinion as to
the merits. If we were to interpret the wording of
paragraphs (1) through (4) to be such as the peti-
tioner proposes, we would be hard-pressed not to
agree that the rule is unconstitutionally broad. It
seems unlikely to us that *every* public comment by
an attorney as to his opinion of the evidence, of the
witnesses or of the merits in a pending administra-
tive hearing would be likely to prejudice that pro-
ceeding. However, the disciplinary rules have the
force of statutes, *American Dredging Co. v. City of
Philadelphia,* 480 Pa. 177, 389 A.2d 568 (1978), and
the rules of statutory construction require that "[a]n
Act of Assembly will not be declared unconstitutional

unless it *clearly, palpably* and *plainly* violates the Constitution.'' (Emphasis in original.) *Hetherington v. McHale,* 10 Pa. Commonwealth Ct. 501, 513, 311 A.2d 162, 168 (1973) (quoting *Daly v. Hemphill,* 411 Pa. 263, 271, 191 A.2d 835, 840 (1963)). We must presume, therefore, that our Supreme Court did not intend an unconstitutional result and we must look to the entire Rule to determine the extent of its coverage. *Pennsylvania Insurance Department v. Adrid,* 24 Pa. Commonwealth Ct. 270, 355 A.2d 597 (1976). In doing so, we hold that the ''reasonable likelihood'' standard of paragraph (5) supplements and modifies each of paragraphs (1) through (4). These paragraphs stand as guidelines to indicate the kind of statements which would normally threaten the fairness of a hearing but such statements are not unqualifiedly prohibited, and whether or not an attorney in a case must remain silent as to any matter delineated in paragraphs (1) through (4) must depend upon whether or not his speech *on that particular issue and in that specific situation* would be reasonably likely to prejudice the tribunal. *See Hirschkop v. Snead, supra.*

### VAGUENESS

It is further argued that the general prohibition of DR 7-107(H)(5) is unconstitutionally vague and that the Rule not only provides insufficient guidance to an attorney who wishes in good faith to make suitable public statements but also promotes arbitrary and discriminatory enforcement of the Rule by the Board. To avoid the infirmity of unconstitutional vagueness, a statute or rule must be sufficiently explicit so as to (1) place a reasonable person on notice of the conduct that is proscribed, (2) allow a reasonable person to know what speech is not prohibited

and thus avoid an unnecessary chill on constitutional expression and (3) limit the discretion of the agency which is charged with the enforcement of the regulation in order to avoid arbitrary and discriminatory application in specific cases. *Grayned v. City of Rockford*, 408 U.S. 104 (1972). It is necessary to determine, therefore, whether or not the restriction on conduct in this case has been appropriately defined so that it can be understood and applied by "the ordinary person exercising ordinary common sense." *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 579 (1973). We acknowledge that the United States Supreme Court has demonstrated great concern that prohibitions on speech not be allowed to chill constitutionally protected expression, *Hynes v. Mayor and Council of Borough of Oradell*, 425 U.S. 610 (1976). We must presume, however, that our own Supreme Court would not have intended such an unenforceable result to occur and we must read DR 7-107(H)(5) in the context of the entire Rule to determine if it is sufficiently specific to avoid unconstitutional vagueness. We recognize, of course, the practical difficulty which exists in drafting a rule general enough to apply to diverse factual situations and yet adequately detailed to fulfill the requirements of the Constitution. Paragraph (5) of the Rule sets out a broad restriction on the speech of an attorney, but that prohibition is tempered when we construe the Rule, as we must, in its entirety. *Pennsylvania Insurance Department v. Adrid, supra.* Paragraphs (1) through (4) of the Rule provide examples of matters often likely to interfere with the fairness of a hearing and they act as caveats by which an attorney may measure his own prospective

behavior.[6] Furthermore, the Rules in their entirety are preceded by ethical considerations which delineate the policy concerns which the Rules are meant to promote.[7] We do not believe that a rule such as DR

---

[6] The interpretation of paragraphs (1) through (4) as illustrations of conduct likely to be prohibited by (5) is borne out by the actual wording of DR 7-107(H)(5) which refers to "[a]ny *other* matter reasonably likely to interfere with a fair hearing." (Emphasis added.)

[7] EC 7-24, for example, states:

In order to bring about just and informed decisions, evidentiary and procedural rules have been established by tribunals to permit the inclusion of relevant evidence and argument and the exclusion of all other considerations. The expression by a lawyer of his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused is not a proper subject for argument to the trier of fact. It is improper as to factual matters because admissible evidence possessed by a lawyer should be presented only as sworn testimony. It is improper as to all other matters because, were the rule otherwise, the silence of a lawyer on a given occasion could be construed unfavorably to his client. However, a lawyer may argue, on his analysis of the evidence, for any position or conclusion with respect to any of the foregoing matters.

And EC 7-33 provides:

A goal of our legal system is that each party shall have his case, criminal or civil, adjudicated by an impartial tribunal. The attainment of this goal may be defeated by dissemination of news or comments which tend to influence judge or jury. Such news or comments may prevent prospective jurors from being impartial at the outset of the trial and may also interfere with the obligation of jurors to base their verdict solely upon the evidence admitted in the trial. The release by a lawyer of out-of-court statements regarding an anticipated or pending trial may improperly affect the impartiality of the tribunal. For these reasons, standards for permissible and prohibited conduct of a lawyer with respect to trial publicity have been established.

7-107(H)(5) can be found unconstitutionally vague if attorneys who are subject to the restrictions therein are guided both by examples of conduct which threaten judicial fairness and by the public policies which underly the Rule.[8] We note also that paragraph (5) relies on a standard of reasonableness and, although we admit that such a standard is difficult to articulate precisely, we believe that it is a pervasive concept throughout the law and is not so uncertain that an ordinary attorney must necessarily guess at its meaning.

The final argument advanced is that the Board unconstitutionally applied the Rule to the facts which underly this case. Again we cannot agree. The Board's letter of November 7, 1978 to Mr. Widoff which both notified him of the dismissal of the complaint against him and cautioned him against any future statements which would violate the Rule, contained no specific findings that his conduct had actually run afoul of DR 7-107(H). Furthermore, even if such a conclusion could be inferred, the Supreme Court has exclusive jurisdiction over appeals related to a Board determination, Sections 722(8) and 725(5) of the Judicial Code, 42 Pa. C. S. §§722(8) and 725(5), and the jurisdiction of the Commonwealth Court over final orders of the Board has been expressly denied, Section 763(c)(1) of the Judicial Code, 42 Pa. C. S. §763(c)(1).

### Conclusion

We hold, therefore, that the guidelines of DR 7-107(H)(1)-(4) and the prohibition of paragraph (5) against statements reasonably likely to interfere with a fair hearing are sufficiently narrow to pro- .

---

[8] *But see Hirschkop v. Snead, supra.*

scribe only so much speech as must be curtailed to ensure the due process guarantee of a fair hearing. We also hold that DR 7-107(H)(5), when read in context of the examples of questionable conduct detailed in paragraphs (1) through (4) and the underlying policy concerns of the ethical considerations, is suitably specific to place an ordinary attorney on notice as to what types of expression are likely to prejudice an administrative hearing.

The petitioner's motion for a declaratory judgment, therefore, will be denied.

Judge WILLIAMS, JR. dissents.

### ORDER

AND Now, this 2nd day of October, 1980, the motion for a declaratory judgment by the petitioner, the Office of the Consumer Advocate, is denied.