**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Appellee,**

v.

**Kevin J. VISSER, Appellant.**

**No. 01–0077.**

Supreme Court of Iowa.

July 5, 2001.

Roger T. Stetson and Margaret C. Callahan of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for appellant.

Norman G. Bastemeyer and David J. Grace, Des Moines, for appellee.

LARSON, Justice.

This respondent, Kevin J. Visser, is an attorney practicing in Cedar Rapids. He graduated from law school in 1980 and

was admitted to practice the same year. He testified he has a general practice with an emphasis on litigation involving labor and employment issues. One of his business clients became involved in a dispute with a former employee that ended up in litigation. The respondent was contacted by a newspaper reporter who obtained a statement from him resulting in these disciplinary charges. The Grievance Commission found this statement violated DR 7–107(G)(1), (2), and (4) (prohibiting extrajudicial statements by lawyer involved in civil litigation). Although the Board of Professional Ethics and Conduct had also charged a violation of DR 1–102(A)(1), (4), and (5) (prohibiting misleading statements), the commission made no findings as to that charge. The commission recommended a public reprimand. On our review, we conclude the board did not establish a violation of DR 7–107 but did establish a violation of DR 1–102(A). We admonish the respondent for that violation.

## I. *Facts and Prior Proceedings.*

In 1998 the respondent's client, Davis–Jones–Lamb Insurance Agency, Inc. (DJL), was contemplating a business venture with a Waterloo business called Net Worth Advisers, a company managed by a Steve Mulder. Mulder was to become a shareholder in DJL under this plan. However, a DJL employee, Charles Heins, objected to the proposal on the ground it would violate his employment agreement with DJL. Heins ultimately was fired, and he brought two suits against DJL.

The first suit challenged a disbursement by DJL, which Heins contended was improper. Heins obtained a temporary injunction, and the respondent's firm moved to dissolve it. The district court dissolved the temporary injunction, and in this order noted that Heins was unlikely to succeed on the merits of his claim. The second suit by Heins was aimed at problems he had experienced with DJL while he was employed there.

Although DJL is a business located in Cedar Rapids, a reporter from the *Waterloo Courier* became interested because the dispute arising out of DJL's proposal affected a Waterloo business. Pat Kinney, a reporter for the *Courier*, attempted to call Visser, but Visser was involved in a deposition and was unable to take the call. Kinney left a message for the respondent to call him back. The respondent attempted to return the reporter's call on the same day but was unable to reach him. He therefore left a voice mail message, and because he felt an immediate response was necessary, faxed a letter to the reporter on the same day. Following is the content of that letter:

I unsuccessfully sought to return your call, and will be in deposition most of the rest of the day. The following points summarize the Defendants' reaction to Mr. Heins' suit:

1. The agency and the individuals were disappointed that Charlie Heins chose to stand in the way of progress by refusing to attend meetings or attend to the agency's work during the time after Davis, Jones & Lamb began to work with Mr. Mulder.

2. The agency was left with no choice but to declare Charlie's employment over after months went by and he refused to meet with the agency or individuals in an effort to understand the benefits of partnering with Net Worth Advisors and how those benefits would help existing Davis, Jones & Lamb clients, including his own. Charlie chose, instead, to be a dis-

ruptive influence within the agency, its employees, and customers.

3. The agency is saddened that a confused and angry young man has chosen to embarrass himself further by filing a lawsuit which is unlikely to succeed. One judge has already determined that he is unlikely to succeed on the merits of his far-fetched claims. (See attached copy of ruling.)

4. When a plaintiff brings a lawsuit claiming ten or more legal theories, it is a pretty good indication that he lacks confidence in any one theory. The agency and individuals, while disappointed that Heins is choosing to sue, are confident that his claims will be found groundless.

5. The individual and corporate defendants have well-earned and longstanding reputations for integrity in the eastern Iowa business community and fully expect that a judge or jury will exonerate them from the claims of this unhappy and confused former employee.

Should you wish further comment, please give me a call.

The *Courier* article written by Kinney appeared on June 6, 1998, the day after Visser faxed his letter. The *Courier* article quoted Visser's letter at length, but it omitted paragraph four, which suggested Heins lacked confidence in any of his theories of suit.

## II. *The Charges.*

The board's complaint alleged violations of DR 7–107(G)(1), (2), and (4) and DR 1–102(A)(1), (4), (5), and (6) of the Iowa Code of Professional Responsibility for Lawyers. DR 7–107(G), dealing with trial publicity, states:

A lawyer or law firm associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, that a reasonable person would expect to be disseminated by means of public communication and that relates to:

(1) Evidence regarding the occurrence or transaction involved.

(2) The character, credibility, or criminal record of a party, witness, or prospective witness.

. . . .

(4) An opinion as to the merits of the claims or defenses of a party, except as required by law or administrative rule.

(5) Any other matter reasonably likely to interfere with a fair trial of the action.

The commission found Visser violated DR 7–107 but made no finding as to DR 1–102(A).

## III. *Resolution.*

■ We review recommendations of the commission de novo. Ct. R. 118.11. The burden of proof is on the board to establish the violations by a convincing preponderance of the evidence. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bjorklund,* 617 N.W.2d 4, 8 (Iowa 2000).

A. *The charge under DR 7–107(G).* The board contends the statements made by the respondent to the *Waterloo Courier* violated DR 7–107(G) under subparts 1 (commenting on evidence), 2 (commenting on the character or credibility of a party), and 4 (expressing an opinion on the merits of the claim). The respondent counters that DR 7–107(G) is unconstitutional on its

face and as applied to him. According to him, the rule is so broad it impinges on lawyers' First Amendment rights because the rule is susceptible of application to protected expression, *i.e.*, out-of-court statements that do not create any real threat to the fairness of the proceedings. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1077, 111 S.Ct. 2720, 2746, 115 L.Ed.2d 888, 925 (1991) (Rehnquist, C.J., dissenting):

> [E]ven those lawyers involved in pending cases can [under a state disciplinary rule and the First Amendment] make extrajudicial statements as long as such statements do not present a substantial risk of material prejudice to an adjudicative proceeding.

■ The board's primary response to the constitutional argument is that, although the respondent initially raised the constitutional issue before the commission, he withdrew it before the commission hearing, and he has therefore waived it. However, we will consider the alleged constitutional infirmities in DR 7–107(G), notwithstanding the respondent's failure to raise it as an issue before the commission, because such an inquiry is necessary to properly interpret the rule. In the analogous area of *statutory* interpretation, courts will read statutes in such a way as to make them constitutional if they are amenable to that interpretation.

> When possible, statutory provisions should be construed in such a way as to avoid unconstitutionality rather than simply void them on the basis of an interpretation which renders them constitutionally infirm. If the law is reasonably open to two constructions, one that renders it unconstitutional and one that does not, the court must adopt the interpretation that upholds the law's constitutionality. It would also be preferable to construe the statute to support

> constitutionality rather than to rewrite or try to improve the statute in some other way.

2A Norman J. Singer, *Statutes and Statutory Construction* § 45.11, at 70–71 (2000 rev.) (footnotes omitted). The same rule of interpretation applies to disciplinary rules. *See Fisher v. Davis*, 601 N.W.2d 54, 59–60 (Iowa 1999) ("Rules have the force and effect of statutes. Consequently we interpret rules in the same manner we interpret statutes.").

■ Disciplinary rules restricting communications by lawyers are "necessarily constrained by the First Amendment." *Peel v. Attorney Disciplinary Comm'n*, 496 U.S. 91, 108, 110 S.Ct. 2281, 2292, 110 L.Ed.2d 83, 99 (1990) (lawyer advertising); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Wherry*, 569 N.W.2d 822, 825 (Iowa 1997) (same). Similarly, lawyers' out-of-court statements regarding matters in litigation are entitled to First Amendment protection. *See Gentile*, 501 U.S. at 1075–76, 111 S.Ct. at 2745, 115 L.Ed.2d at 923–24.

> [I]n cases raising First Amendment issues ... an appellate court has an obligation to "make an independent examination of the whole record" in order to make sure that "the judgment does not constitute a forbidden intrusion on the field of free expression."

*Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502, 515 (1984) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 285, 84 S.Ct. 710, 729, 11 L.Ed.2d 686, 709 (1964)).

The Nevada disciplinary rule in *Gentile* was substantially different from our rule. Also, *Gentile* involved a lawyer's comments at a press conference about a pending criminal, not a civil, case. Nevertheless, the Court made it clear that, to avoid running afoul of the First Amendment, a

rule must be restricted to speech that creates a "substantial likelihood of material prejudice." *Gentile,* 501 U.S. at 1075, 111 S.Ct. at 2745, 115 L.Ed.2d at 923. Four members of the Court also stated:

> While it is true that [the rule's] standard for controlling pretrial publicity must be judged at the time a statement is made, *ex post* evidence can have probative value in some cases.

*Id.* at 1047, 111 S.Ct. at 2730, 115 L.Ed.2d at 905 (plurality opinion). In view of this principle, these four justices concluded that later events bore on the question of the publicity's effect on the right to a fair trial. This included the fact that no request had been made for a change of venue, the jury was impaneled without apparent difficulty, members of the jury panel had only vague recollections of news reports, and "not a single juror indicated any recollection of [the lawyer] or his press conference." These four justices would have held there was not a "likelihood of material prejudice." *Id.* at 1048, 111 S.Ct. at 2731, 115 L.Ed.2d at 906 (plurality opinion).

The Restatement of the Law Governing Lawyers adopts the view that, to be sanctionable, a statement must be one reasonably likely to affect the outcome. Section 109 of the Restatement provides:

> An Advocate's Public Comment on Pending Litigation.
>
> (1) In representing a client in a matter before a tribunal, a lawyer may not make a statement outside the proceeding that a reasonable person would expect to be disseminated by means of public communication *when the lawyer knows or reasonably should know that the statement will have a substantial likelihood of materially prejudicing a juror or influencing or intimidating a prospective witness in the proceeding.* However, a lawyer may in any event make a statement that is reasonably necessary to mitigate the impact on the lawyer's client of substantial, undue, and prejudicial publicity recently initiated by one other than the lawyer or the lawyer's client.

2 Restatement (Third) of the Law Governing Lawyers § 109, at 160–61 (1998) (emphasis added).

If we were to apply rule 7–107(G)(1), (2), and (4) without any limitation as to the potential effect of the lawyer's comments, this would clearly make the rules violative of a lawyer's First Amendment rights because they would proscribe statements that do not ˙pose "a substantial risk of material prejudice" to the judicial proceeding in question. *See Gentile,* 501 U.S. at 1075, 111 S.Ct. at 2745, 115 L.Ed.2d at 923.

Pennsylvania's commonwealth court interpreted their rule similar to our rule 7–107 to incorporate a requirement that the statement be "reasonably likely to interfere with a fair hearing." *Widoff v. Disciplinary Bd.,* 54 Pa.Cmwlth. 124, 420 A.2d 41 (1980). Pennsylvania's DR 7–107(H) applied to comments by lawyers in connection with administrative proceedings, but we believe the rationale of that case is applicable here as well. Pennsylvania's rule provided:

> During the pendency of an administrative proceeding, a lawyer or law firm associated therewith shall not make or participate in making a statement, other than a quotation from or reference to public records, that a reasonable person would expect to be disseminated by means of public communication if it is made outside the official course of ˙the proceedings and relates to:
>
> (1) Evidence regarding the occurrence or transaction involved.

(2) The character, credibility, or criminal record of a party, witness, or prospective witness.

(3) Physical evidence or the performance or results of any examinations or tests or the refusal or failure of a party to submit to such.

(4) His opinion as to the merits of the claims, defenses, or positions of an interested person.

(5) *Any other matter reasonably likely to interfere with a fair hearing.*

*Widoff,* 420 A.2d at 43 (emphasis added).

We note Pennsylvania's rule, like Iowa's, does not incorporate the "reasonably likely to interfere" requirement in its first four subparagraphs. That language appears only in subparagraph 5 of the Pennsylvania rule, as in Iowa's DR 7–107(G).

The Pennsylvania court said:

If we were to interpret the wording of paragraphs (1) through (4) to be such as the [attorney] proposes, we would be hard-pressed not to agree that the rule is unconstitutionally broad. It seems unlikely to us that *every* public comment by an attorney as to his opinion of the evidence, of the witnesses or of the merits in a pending administrative hearing would be likely to prejudice that proceeding.

*Widoff,* 420 A.2d at 45 (emphasis added).

The court noted the general principle that such provisions will be read in a way to uphold them under constitutional challenge and continued:

[W]e hold that the "reasonable likelihood" standard of paragraph (5) supplements and modifies each of paragraphs (1) through (4). These paragraphs stand as guidelines to indicate the kind of statements which would normally threaten the fairness of a hearing but such statements are not unqualifiedly prohibited, and whether or not an attorney in a case must remain silent as to any matter delineated in subparagraphs (1) through (4) must depend upon whether or not his speech *on that particular issue and in that specific situation* would be reasonably likely to prejudice the tribunal.

*Id.* at 46 (emphasis added). The court in *Widoff* found that, when the restrictive language of subparagraph 5 is read into the other subparagraphs, the rule passed First Amendment scrutiny. *Id.* at 47.

■ We agree with this analysis. In order for DR 7–107(G) to pass constitutional muster, the statements made here must have been reasonably likely to affect the fairness of the proceedings.

■ In applying the rule as so interpreted, we look to the facts surrounding the statements at the time they were made, but we also look to the *ex post* evidence that relates to the likelihood of prejudice. *See Gentile,* 501 U.S. at 1047, 111 S.Ct. at 2730, 115 L.Ed.2d at 905 (plurality opinion). The newspaper article spawned by the respondent's letter was published in Waterloo, which is over fifty miles from Cedar Rapids, where the trial was held. This article, which was the only one published in connection with the case, was published on November 6, 1998—almost two years before the trial. None of the jurors had even heard of the parties. Patrick Roby, an attorney testifying for Visser before the commission, said he did not believe the *Courier* article had any impact on the trial, stating "I don't know where you'd find a *Waterloo Courier* in Cedar Rapids."

On our review of the record, we believe a reasonable fact finder would not conclude that the statement in question was reasonably likely to affect the fairness of the proceeding. We therefore find no violation of DR 7–107(G).

**B.** *The charge under DR 1–102(A).* As we noted earlier in the statement of facts, the respondent said in his letter to the *Courier* reporter that "one judge has already determined that [Heins] is unlikely to succeed on the merits of his far-fetched claims." As the respondent concedes, this is only partially true. This comment by the judge was only in connection with the plaintiff's first suit requesting an injunction. The judge expressed no opinion on the merits of the second suit, under which the claims were different.

The board charged this statement by the respondent violated DR 1–102(A):

A lawyer shall not:

(1) Violate a disciplinary rule.

. . . .

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

The respondent argues that the claims under the first and second suits arose out of the same factual background and were so interrelated that a statement as to one case by the judge could be construed to apply to both. He also argues that he had attached a copy of the actual court order to his letter to the reporter, so the reporter could discern for himself the true scope of the order. However, while the reporter's reading of the order might have caused him to disagree with the respondent's view of the order's scope, the fact is the respondent's actual statement misrepresented its scope.

Although we realize the statement was made under the pressure of the situation, the fact is it was only partially true and was therefore a misrepresentation under DR 1–102(A)(4). We admonish the respondent, and the bar generally, that we do not condone such conduct. *See Comm. on Prof'l Ethics & Conduct v. Liles,* 430 N.W.2d 111, 113 (Iowa 1988) ("We employ professional admonitions not so much by way of criticism as to instruct the bar. We view admonitions as considerably less severe than reprimands, and consider them to be something less than actual discipline.").

We do not agree with the commission that the board established a violation of DR 7–107(G). However, we admonish the respondent for his violation of DR 1–102(A).

**ATTORNEY ADMONISHED.**