COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Appellee,

v.

George T. QUALLEY, Appellant.

No. 92–405.

Supreme Court of Iowa.

July 22, 1992.

Lee H. Gaudineer of Austin, Gaudineer, Austin, Salmons & Swanson, Des Moines, and George T. Qualley, Sioux City, pro se, for appellant.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

CARTER, Justice.

Attorney George T. Qualley (appellant) appeals from the recommendation of the sixth division of the Grievance Commission of this court (the commission), which heard evidence concerning allegations that he had violated the Iowa Code of Professional Responsibility for Lawyers. The appellee is the Committee on Professional Ethics and Conduct (the committee). The commission determined that appellant was guilty of violating our disciplinary rules and recommended that he be publicly reprimanded. Although we do not agree entirely with the commission's conclusions as to which rules have been violated, we do agree with its ultimate recommendation for a sanction.

Appellant was admitted to the practice of law in Iowa in 1957. He is also admitted to practice in Minnesota, Nebraska, North Dakota, South Dakota, Wisconsin, and the District of Columbia. The committee's charges against appellant grow out of two separate and unrelated transactions involving the same client.

The first transaction involved in the committee's complaint was a business arrangement for anticipated profit, which appellant entered into with his then client Oris J. Glass in September 1985. It involved the purchase from Norwest Bank of Gregory, South Dakota, of the notes and mortgages of Kaupp Hereford Farms, Inc. and the Kaupp family. As part of the same transaction, Glass and appellant negotiated a purchase of the Kaupp assets, which they believed could be liquidated for more than the sums paid to Norwest for the notes and mortgages. The committee charged that respondent violated DR 5–104(A) by entering into this business relationship with a client without fully advising Glass concerning their conflicting interests in this transaction and obtaining Glass's informed consent. The commission agreed with that contention and found an ethical violation by appellant based on that rule.

The second transaction involved in the committee's complaint also involved Glass. According to the committee's allegations, appellant in December 1986 was negotiating on Glass's behalf with an Omaha bank with which Glass had more than one million dollars of defaulted loans. When the negotiations did not proceed to Glass's satisfaction, appellant recommended that Glass seek protection under chapter 11 of the federal bankruptcy code.

Because the transactions had a South Dakota nexus, it was agreed that the bankruptcy filing should be in that state. Appellant telephoned Fred Hendrickson, a Sioux Falls, South Dakota, lawyer who had

once been a member of appellant's law firm in Sioux City. Appellant arranged for Hendrickson to handle Glass's South Dakota bankruptcy matter.

Hendrickson asked for a retainer of $10,000 and an additional advancement of $600 for the bankruptcy filing fee. Glass wrote a check to Hendrickson for $10,600 and entrusted it to appellant. With Hendrickson's consent, the proceeds of this check were ultimately deposited in a bank account maintained jointly by Hendrickson and appellant in a Sioux City bank. Appellant, in turn, advanced the $600 filing fee for Glass's South Dakota bankruptcy. The proceeds of Glass's $10,600 check were later drawn on by appellant to pay debts owed to him by Hendrickson.

Hendrickson promptly filed the chapter 11 petition for Glass, but later withdrew as his counsel. Prior to Hendrickson's withdrawal from the South Dakota bankruptcy proceeding, that court had ordered the return of Hendrickson's $10,000 retainer to Glass's bankruptcy estate. That order made Hendrickson and appellant joint and several obligors for the return of that amount. The commission found that appellant's conduct in the handling of the retainer check was a violation of DR 7–101(A)(3) and DR 9–102(A). We separately consider the Kaupp and Hendrickson transactions in our review of the commission's recommendation.

## I. *The Kaupp Transaction.*

■ Appellant's agreement with Glass on the Kaupp transaction was reduced to writing and provided, in part, as follows:

On the 5th day of September, 1985, O.J. Glass entered into an agreement with the Norwest Bank of Gregory, South Dakota for the purchase of their loans, mortgages and security interests to and with Kaupp Hereford Farms, Inc., O.J. Kaupp, his wife, brothers and a sister-in-law. Under the agreement Glass purchased the interest of Norwest Bank amounting to approximately $3.4 million, for the sum of $2.4 million and Glass became personally obligated on the $2.4

million dollars to Norwest Bank, with no money down.

On September 4 and September 5, 1985, O.J. Glass also entered into an agreement with Kaupp Hereford Farms, O.J. Kaupp, his wife, two brothers and a sister-in-law to purchase all of their assets, except household furnishings, to be held in escrow for use in paying off the full $3.4 [million] debt to Norwest, and other debts that constituted encumbrances on their assets. Qualley conceptualized and drafted the legal instruments that were executed in this regard and, together with Glass, negotiated the aforesaid transaction with Norwest Bank. At all times throughout the negotiation and consummation of the aforesaid transaction, Glass and Qualley functioned as joint venturers on a 50–50 basis.

It is understood between the parties that each are responsible for 50% of the liabilities and are entitled to 50% of the profits, if any there be, of the transaction. In computing profits, out of pocket expenses reasonably necessary and actually incurred should be deducted from the gross revenues and that remaining will constitute the net profits to which the 50–50 division shall apply. Both parties shall mutually agree what constitutes reasonable expenses before the division occurs.

The purpose of this Agreement is to memorialize the understanding of the parties regarding this transaction.

Executed this 6th day of September, 1985 by the undersigned, and each hereby acknowledges receiving a copy thereof.

/s/
Oris J. Glass

/s/
George T. Qualley

Obviously, this September 6, 1985 agreement was a recital of a prior oral agreement with respect to the transactions involved. It expressly states that "Qualley conceptualized and drafted the legal instruments that were executed in this regard [the agreement with the Kaupps] and, to-

gether with Glass, negotiated the aforesaid transaction with Norwest Bank."

■ We agree with the commission that the fact that appellant and his client contracted for an equal division of the profits does not establish that they did not have different interests at some stage of the transaction. The record reflects that appellant acted as attorney for both throughout the transactions with the Kaupps and with Norwest Bank. He made no showing to the commission that he had met the high standards of disclosure required by DR 5-104(A). We therefore uphold the commission's finding that appellant violated that rule in the Kaupp transaction. *See, e.g., Committee on Professional Ethics & Conduct v. Postma*, 430 N.W.2d 387, 391–92 (Iowa 1988); *Committee on Professional Ethics & Conduct v. Mershon*, 316 N.W.2d 895, 899 (Iowa 1982).

## II. *The Hendrickson Retainer Transaction.*

We next consider the ethical violations found to have occurred in the Hendrickson retainer transaction. Our discussion of that matter will consider appellant's contention that, because a complaint concerning that matter has already been processed to a conclusion by South Dakota disciplinary authorities, our only recourse is to impose reciprocal discipline under Supreme Court Rule 118.17.

■ A. *Effect of South Dakota disciplinary proceeding.* On July 28, 1988, appellant received a letter from the Disciplinary Board of the State Bar of South Dakota. It advised him that the letter was to be considered as a complaint against him by that disciplinary board touching on his performance as an attorney in Oris Glass's chapter 11 bankruptcy proceeding. This complaint specifically referred to the order of the bankruptcy court requiring return of the Hendrickson retainer as an asset in the bankruptcy estate.

Ultimately, a hearing was held on the complaint by the South Dakota disciplinary board, and appellant was issued a private letter of reprimand. Appellant contends that, as a result of the South Dakota disci-

plinary proceeding, an independent proceeding for lawyer discipline may not be initiated by the Iowa committee. He asserts that the only form of discipline available is reciprocal discipline under court rule 118.17. We disagree.

Appellant's argument concerning the legal effect of the South Dakota disciplinary proceeding is invalid for two reasons. First, for all that appears in the record concerning that complaint, it only involved violations of bankruptcy court rules and did not consider the disciplinary rules at issue in the Iowa proceeding. Second, this transaction originated in appellant's Sioux City office, and the funds at issue were deposited in a Sioux City bank. The transaction thus has a sufficient Iowa nexus to allow a complaint based on actions taken entirely within this state.

■ B. *The merits of the rule violations found by the commission.* The commission found that appellant's conduct with respect to the Hendrickson retainer was a violation of DR 9-102(A) requiring Iowa lawyers to deposit funds received from clients in "identifiable interest-bearing trust accounts maintained as set forth in DR 9-102(C)." We must disagree with that conclusion.

■ The requirements of DR 9-102(C) mandate that the interest-bearing trust account must be in a financial institution authorized to do business in this state. We believe that, when an Iowa lawyer receives client funds intended as a retainer for a lawyer in another state, those funds may be turned over to the latter lawyer's control. After he received the Hendrickson retainer from Glass, appellant did drive to Sioux Falls, South Dakota, and deliver the check to Hendrickson. He concedes, however, that he had no intention of letting it remain in Hendrickson's control. Moreover, he knew, as did Hendrickson, that once the check was deposited in their joint account in the Sioux City bank, the funds would be used to pay Hendrickson's obligations to appellant.

Appellant and Hendrickson both believed that under South Dakota disciplinary rules

the latter was free to deal with the retainer fee as his own property. The committee has failed to establish that this was not the case, although subsequent events established that the handling of the check was a violation of a bankruptcy court rule requiring prior approval of attorney fees.

We are not suggesting that the manner in which appellant handled the retainer check was proper. We merely conclude that his actions in this respect were not subject to DR 9–102(A). The commission also found that the conduct involved was a violation of DR 7–101(A)(3), which provides that a lawyer shall not intentionally "prejudice or damage his client during the course of the professional relationship." If the bankruptcy court had not ordered the return of the retainer, Glass might well have been prejudiced because ultimately Hendrickson failed to see the bankruptcy matter through to a conclusion. We therefore agree with the commission that a violation of DR 7–101(A)(3) was established by the committee. As a result of that violation and our prior finding concerning appellant's violation of DR 5–104(A), we agree with the commission's recommendation for a public reprimand.

Based on all of the circumstances in the case, the commission's recommendation for discipline and our conclusions with respect thereto we hereby reprimand attorney George T. Qualley for his conduct in these two transactions with his client, Oris J. Glass.

ATTORNEY REPRIMANDED.