**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Brian P. BISBEE, Respondent.**

No. 99–705.

Supreme Court of Iowa.

Oct. 13, 1999.

Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.

Brian P. Bisbee, Clarksville, Tennessee, pro se.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and TERNUS, JJ.

NEUMAN, Justice.

This is a disciplinary action involving Brian P. Bisbee, formerly of Grinnell but now residing in Montgomery County, Tennessee. The case is before us for de novo review in accordance with Iowa Court Rule 118.10. A division of the grievance commission, having heard the case prepared by the Iowa Supreme Court Board of Professional Ethics and Conduct (board), recommended license revocation. On our review we conclude that Bisbee's misconduct does not warrant disbarment but his ethical breaches demand no less than a three-year suspension.

## I. Background Facts.

Bisbee, though properly served, filed no answer to the board's complaint. He failed to respond to the board's request for admissions, and did not appear at the hearing. Requests for admissions, unanswered or not objected to, stand admitted in a lawyer disciplinary proceeding. *Committee on Prof'l Ethics & Conduct v. Shaffer,* 230 N.W.2d 1, 3 (Iowa 1975). Thus the facts alleged by the board are undisputed and may be recited briefly.

Bisbee practiced law in Grinnell, Iowa, with attorney Stephen T. Brennecke. Cora Creamer, an elderly widow, contacted Bisbee about financial difficulties she was encountering with a home she owned in Las Vegas, Nevada. She held the property free of any mortgage, but had no money to pay delinquent taxes and unpaid utilities. She reportedly offered Bisbee fifty percent of her equity in the home to clear up these delinquencies. Bisbee agreed to do so on those terms.

Bisbee flew to Las Vegas and, in the course of one day, made the necessary payments and completed essential paperwork. A Grinnell realtor evidently advanced the sum needed to cover the delinquencies. Sometime thereafter the home sold for $102,000. Closing documents indicate Bisbee and Creamer each received checks for $43,000.

The transaction came to light when Bisbee's partner, Brennecke, learned from a mutual friend about Bisbee's trip to Las Vegas. Upon inquiry, Bisbee divulged the facts detailed above. He acknowledged that the sum total of delinquent property taxes and unpaid utilities amounted only to $7900. He also made plain that he had no intention of depositing the $43,000 payment in their partnership account because, in his view, the services performed for Creamer were not "legal" but "financial."

Brennecke believed the cash payment was either a clearly excessive fee or the fruits of a business transaction with a client tainted by conflict of interest. He and Bisbee terminated their partnership. Thereafter Brennecke filed a complaint with the board. In Bisbee's only response to the board's preliminary investigative inquiries, he requested the board to "remove my name from the list of licensed attorneys in the State of Iowa."

## II. Complaint.

The board charged Bisbee with violation of the following provisions of the Iowa Code of Professional Responsibility for Lawyers: DR 5–104(A) (lawyer shall not enter business transaction with client having different interest, unless client consents after full disclosure); DR 2–106(A) (lawyer shall not charge or collect an illegal or clearly excessive fee); DR 1–102(A)(4) (prohibiting lawyer from engaging in conduct involving dishonesty); and DR 1–104(A)(5) and (6) (prohibiting conduct prejudicial to administration of justice and adversely reflecting on fitness to practice law). The burden rests with the board to prove its case by a convincing preponderance of the evidence. *Committee on Prof'l Ethics & Conduct v. Humphrey,* 529 N.W.2d 255, 258 (Iowa 1995).

The board's complaint alleged, and the record confirms, that Bisbee took a fifty percent interest in his client's property in exchange for paying off debts of $7900 to clear the title. Bisbee knew at the time that the property was worth at least $100,000. Instead of advising his client that the delinquent taxes could be deducted from the sale price at closing, he became a partner in the transaction. Thus arose the conflict. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Wagner,* 599 N.W.2d 721, 727 (Iowa 1999) (lawyer's own financial stake in transaction brought interest into conflict with client's). It was in each party's interest to receive as much of the sale proceeds as possible. Yet the more Bisbee received, the less his client received. *See Committee on Prof'l Ethics & Conduct v. Qualley,* 487 N.W.2d 327, 330 (Iowa 1992) (agreement between lawyer and client for equal division of profits in purchase of mortgages did not establish lack of differing interest during transaction).

DR 5–104(A) teaches that "in the absence of client consent after full disclosure, a lawyer cannot represent a client whose business interests conflict with the lawyer's own." *Committee on Prof'l Ethics &*
*Conduct v. Oehler,* 350 N.W.2d 195, 198–99 (Iowa 1984). Nothing in the record before us suggests that Bisbee disclosed to his client that the proposed financial arrangement was more advantageous for him than for her. Given this obvious conflict, it became Bisbee's burden to establish that his transaction with Creamer was fair and equitable. *Wagner,* 599 N.W.2d at 723. He has utterly failed to do so. *See Qualley,* 487 N.W.2d at 330 (enforcing high standards of disclosure required by DR 5–104(A)).

Although it is evident that the sum received by Bisbee exceeded any reasonable value of services rendered to his client, thus supporting the board's alternative claim that he violated DR 2–106, *see, e.g., Iowa Supreme Court Board of Professional Ethics & Conduct v. Hoffman,* 572 N.W.2d 904, 907–08 (Iowa 1997) (holding contingent fee excessive under DR 2–106 where recovery stemmed from insurance company's voluntary payments of workers' compensation claim, not lawyer's efforts), it appears that Bisbee's recovery represented his share of a business deal with a client, not a fee. For the same reason we are also not convinced that the board established dishonest conduct by Bisbee toward his law partner in violation of DR 1–102(A)(4). *Cf. Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Carr,* 588 N.W.2d 127, 129 (Iowa 1999) (conversion of client funds and failure to account for receipt of money to law firm warranted revocation of lawyer's license).

Bisbee's failure to cooperate with the board in the investigation of this matter constitutes a separate violation of our ethics rules. *Committee on Prof'l Ethics & Conduct v. Nadler,* 467 N.W.2d 250, 254 (Iowa 1991).

## III. Sanction.

As in all disciplinary matters, we give respectful consideration to the commission's findings and recommended sanction but are not bound by them. *Commit-*

tee on Prof'l Ethics & Conduct v. Hall, 463 N.W.2d 30, 35 (Iowa 1990). We believe the commission's recommendation that we revoke Bisbee's license may stem in part from his expressed desire to sever ties with the legal profession in Iowa. Disbarment on consent, however, is governed by Iowa Supreme Court Rule 118.15. The rule requires a voluntary acquiescence to disbarment, accompanied by a statement acknowledging the truth of all material facts revealed by the investigation and a concession that the attorney could not successfully defend against the board's complaint. *See* Court R. 118.15. Bisbee's terse offer to "turn in" his license falls far short of rule 118.15's requirements.

 We nevertheless concur in the commission's view that Bisbee's financial dealings with Creamer seriously violated his ethical responsibility as her lawyer. She was entitled to professional judgment unimpaired by Bisbee's personal interest in the transaction. *Oehler,* 350 N.W.2d at 198–99. In other cases involving violations of DR 5–104(A) we have imposed sanctions ranging from public reprimand to revocation, depending on the circumstances. *See, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stamp,* 590 N.W.2d 496, 500–01 (Iowa 1999) (one-year suspension for lawyer/bank director who purchased shares of bank stock at reduced value, without notice to heirs, from estate he represented); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sikma,* 533 N.W.2d 532, 537–38 (Iowa 1995) (three-month suspension for lawyer who involved client in investing in fledgling corporation of which lawyer was officer); *Qualley,* 487 N.W.2d at 331 (lawyer publicly reprimanded for disregarding disclosure requirements of DR 5–104(A) in two business transactions with client); *Hall,* 463 N.W.2d at 36 (lawyer's license revoked for engaging client in costly series of business ventures without disclosures required by DR 5–104(A), combined with fraudulent misrepresentation on purchase money mortgages); *Committee on Prof'l Ethics &*

*Conduct v. Postma,* 430 N.W.2d 387, 392–93 (Iowa 1988) (six-month suspension for entering business transaction with client without required disclosures, compounded by unethical and dishonest ex parte communication with judge to facilitate transaction).

Bisbee's financial entanglement with Creamer, while evidently an isolated ethical misstep, was costly to her. Moreover, his failure to cooperate in these proceedings has impeded the administration of justice and reflects poorly on his fitness to practice law. His disregard for his client's interests, as well as those of the profession, demands a lengthy suspension.

We therefore suspend Brian Bisbee's license to practice law in this state indefinitely, with no possibility of reinstatement for three years. This suspension shall apply to all facets of the practice of law. *See* Court R. 118.12. Upon application for reinstatement, the respondent shall furnish proof that he has complied with the notification and disengagement requirements of rules 118.13 and 118.18. Costs are assessed to the respondent.

**LICENSE SUSPENDED.**