619 N.W.2d 321 (2000)
IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,
v.
Michael W. FAY, Respondent.
No. 00-1140.
Supreme Court of Iowa.
November 16, 2000.
*323 Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.
Michael W. Fay, Cedar Rapids, respondent, pro se.
Considered en banc.
CADY, Justice.
This lawyer disciplinary proceeding requires us to review a recommendation by a division of the Grievance Commission that the license of Michael W. Fay to practice law in Iowa be suspended for a period of thirty days for his involvement in a business transaction with a client in violation of DR 5-104(A) and DR 1-102(A)(5) and (6). On de novo review, we concur with the recommendation of the commission.
I. Background Facts and Proceedings.
Michael W. Fay is a Cedar Rapids lawyer. He was admitted to practice law in Iowa in 1966. He received a public reprimand in 1992 for allowing others to influence his professional judgment in providing legal services to clients and aiding the unauthorized practice of law in violation of DR 5-107(B) and DR 3-101(A). Fay had been hired by an out-of-state corporation to provide legal advice to Iowans who purchased trust agreements from the corporation.
In 1993, Fay began representing Jeanice Havlik in a variety of personal and business matters. Havlik owned and operated an interior decorating business in Cedar Rapids called "Red Door Interiors."
In April 1997, Havlik and the bookkeeper for the interior decorating business met with Fay in his office to discuss the operation of the business. The business was experiencing some financial difficulties and the lease of the business premise was about to expire. Havlik was interested in moving the business to a new location. She also wanted to reduce her expenditures by living and working in the same building.
During the course of the office conference, Fay suggested that Havlik lease the house he occupied as his residence. It was an older Victorian style home located on a corner lot in a pleasant, high traffic residential area of the city. The house was owned by Fay's daughter, but Fay maintained *324 an interest in the house in the nature of a life estate. The house was previously owned by Fay's parents, and Fay had lived in the house since 1989. The property was zoned for residential use. The house was run down and in need of substantial repairs.
After touring the house and engaging in numerous other discussions with Fay, Havlik agreed to lease the house. Pursuant to their discussions, Fay would move from the house and make substantial repairs to the exterior. Havlik was free to alter the interior of the house to meet her personal and business needs. Fay told Havlik that he believed business use of the house would qualify under the home occupancy exception to the city zoning ordinance. He also told Havlik he would pursue a zoning change or a variance at his own expense if the city officials did not approve the business use of the house under the exception. Fay and Havlik signed a standard form lease agreement, and agreed to a monthly rental payment.
Fay did not feel he was representing Havlik in the lease agreement. Consequently, he never told her that his interests in the transaction may be in conflict with her interests. Additionally, he had no recollection of advising Havlik to seek independent counsel during the negotiation of the lease. Havlik in fact did not consult an attorney for advice prior to signing the lease and moving into the house.
Havlik moved into the house in July 1997, and began operating her business. City officials, however, soon began to question the operation of the business from the house. They also discovered numerous code violations within the interior of the home. Havlik notified Fay of the problems, and he initiated discussions and negotiations with the city on behalf of Havlik. Havlik, however, became disenchanted with the developments and eventually contacted another lawyer.
Havlik later stopped paying the monthly rent required under the lease. Fay responded by serving Havlik with the initial prerequisite notice for eviction.
Havlik moved from the house in December 1997. She then brought a lawsuit against Fay based on a variety of claims, including negligent misrepresentation. Fay filed a counterclaim for unpaid rent. The lawsuit resulted in a judgment against Fay based on negligent misrepresentation.
Fay's former wife filed a complaint with the Board of Professional Ethics and Conduct concerning Fay's activities in the lease transaction with Havlik. The board brought this action against Fay for engaging in a business transaction with a client without disclosing the existence of a conflict of interest in violation of DR 5-104(A). The board also claimed the conduct was prejudicial to the administration of justice and adversely reflected on Fay's fitness to practice law in violation of DR 1-102(A)(5) and (6). The commission found Fay violated the disciplinary rules and recommended he be suspended from the practice of law for a period of thirty days.

II. Standard of Review.
Our review is de novo. Ct. R. 118.10. "Although we give respectful consideration to commission recommendations, we ultimately decide what discipline is appropriate under the [specific] facts of each case." Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Beckman, 557 N.W.2d 94, 95 (Iowa 1996) (citing Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gottschalk, 553 N.W.2d 322, 323 (Iowa 1996)). Misconduct must be proven by a convincing preponderance of the evidence. Beckman, 557 N.W.2d at 95.

III. Violations.
Fay claimed he did not violate DR 5-104(A) because he did not have a conflict of interest with Havlik. He believed the transaction was beneficial to both parties and he did not engage in any dishonest or deceitful conduct. He also maintained Havlik knew he was not representing her in the lease and she did not expect him to *325 exercise his professional judgment for her protection in the negotiation of the lease.
We have previously observed that Canon 5 of the Rules of Professional Responsibility clearly mandates "a lawyer cannot represent a client whose business interests conflict" with the lawyer's own interests "in the absence of client consent after full disclosure." Committee on Prof'l Ethics & Conduct v. Oehler, 350 N.W.2d 195, 198 (Iowa 1984). It is a rule which must be rigidly followed by our bar, and is strictly enforced. Id. at 199.
DR 5-104(A) specifically limits business transactions between lawyers and clients when the lawyer and client have "differing interests" in the transaction and when "the client expects the lawyer to exercise professional judgment [in the transaction] for the protection of the client...." When these circumstances are present, a lawyer must refrain from entering into the transaction unless the client has consented after full disclosure by the lawyer. See Committee on Prof'l Ethics & Conduct v. Carty, 515 N.W.2d 32, 35 (Iowa 1994). Business ventures between lawyers and their clients are normally discouraged. Committee on Prof'l Ethics & Conduct v. Postma, 430 N.W.2d 387, 391 (Iowa 1988). We first consider whether the circumstances of the rule apply in this case.
DR 5-104(A) applies only to transactions with clients. Yet, a client under the rule means not only an existing attorney-client relationship, but also a person "who regularly rel[ies] on an attorney for legal services ... on an occasional and on-going basis." Carty, 515 N.W.2d at 35 (quoting Postma, 430 N.W.2d at 392). Thus, an attorney-client relationship cannot be turned off and on to avoid the rule as Fay seems to suggest. Havlik had relied on Fay for legal services on an on-going basis in the past and specifically consulted him about moving her business to a new location at the end of her existing business lease. Havlik was clearly a client under the rule at the time the lease was negotiated and executed.
The lease arrangement also constituted a business transaction with a client under the rule. See Committee on Prof'l Ethics & Conduct v. McCullough, 465 N.W.2d 878, 884 (Iowa 1991) (noting any "commercial activity engaged in for a profit" constitutes a business transaction). A business transaction is a broad term under the rule and would clearly include a lease agreement. See id.
The transaction also involved a clear conflict of interest between Fay and Havlik. Fay maintained an interest in the property which was the subject of the lease. He also represented the interests of his daughter. The competing interests of a lessor and lessee necessarily present a conflict of interest under the rule. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Wagner, 599 N.W.2d 721, 726-27 (Iowa 1999) (recognizing obvious differing interests between a buyer and seller of real estate); Carty, 515 N.W.2d at 35 (EC 5-3 warns that the "self-interest of a lawyer resulting from property ownership may interfere with the lawyer's judgment on behalf of a client").
Finally, the nature of the business transaction between Fay and Havlik indicated Havlik expected Fay to exercise professional judgment for her protection and the protection of her business. The business transaction entered into between Fay and Havlik was the product of the very reason Havlik met with Fay and sought his legal advice in the course of their attorney-client relationship. Despite Fay's suggestion that Havlik knew he was not actually representing her in the lease, Fay and Havlik maintained an attorney-client relationship and it was reasonable for Havlik to expect Fay to exercise his professional judgment in the course of that relationship for her benefit. We conclude the circumstances of DR 5-104(A) applied to the facts of this case. Thus, the question turns to whether Havlik consented after full disclosure.
*326 Once a lawyer enters into a business transaction with a client which falls within DR 5-104(A), it is not enough for the lawyer to simply refrain from deceitful or dishonest conduct. See Wagner, 599 N.W.2d at 726 (conflict still existed despite fact attorney did not actually negotiate the purchase price). Similarly, it is not enough for the lawyer to maintain a good faith intent to achieve a favorable outcome for a client. See id. (board does not need to prove improper motive). Instead, the thrust of DR 5-104(A) is that an attorney who engages in such a business transaction with a client must take affirmative action to fully disclose to the client the conflict of interest and obtain the consent of the client. A person who seeks legal advice must be able to "expect unfettered independence of professional judgment of a lawyer whose loyalty to that person is total." Oehler, 350 N.W.2d at 199. Thus, full disclosure not only means disclosure of the nature of the transaction, but it also means explaining to the client why he or she would benefit from independent counsel and insisting independent counsel be secured. Wagner, 599 N.W.2d at 728; see Carty, 515 N.W.2d at 36.
Fay failed to provide Havlik with full disclosure as required under the rule. We agree with the commission that his conduct violated DR 5-104(A). Similarly, his conduct was prejudicial to the administration of justice in violation of DR 1-102(A)(5) and adversely reflects on his fitness to practice law in violation of DR 1-102(A)(6).

IV. Discipline.
Past sanctions imposed on lawyers for entering into business transactions with clients in violation of DR 5-104(A) have ranged from reprimand to revocation of license, "depending on the severity of the violations." Committee on Prof'l Ethics & Conduct v. Hall, 463 N.W.2d 30, 35-36 (Iowa 1990). In the end, the sanction in each attorney disciplinary case rests with the particular circumstances of each case. Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Carr, 588 N.W.2d 127, 129 (Iowa 1999). In determining sanctions under the circumstances of each case, "we not only consider the nature of the violations, but also the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the [violator's] fitness to continue to practice law." Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lemanski, 606 N.W.2d 11, 14 (Iowa 2000). In considering the particular facts, we look to a variety of circumstances, including the existence of prior violations. Id.
Although Fay sincerely believed he was helping his client and was not motivated by any personal gain or profit, there are aggravating factors which militate in favor of the sanction recommended by the commission. The first factor is the harm to the client. Wagner, 599 N.W.2d at 730; see also Committee on Prof'l Ethics & Conduct v. Baker, 269 N.W.2d 463, 466 (Iowa 1978) (finding economic harm aggravates conflict of interest violation). If Havlik had secured independent counsel, it is likely the lease would not have been entered into until the zoning issue was resolved so that the business could be legally operated from the house. Although Havlik eventually recovered her loss in her civil action against Fay, this does not change the fact that Fay's actions produced harm to a client. See Committee on Prof'l Ethics & Conduct v. Gardalen, 414 N.W.2d 124, 129 (Iowa 1987) ("damage payment to a client is not a mitigating [factor]").
Another aggravating factor in this case is that Fay has received a prior reprimand. Moreover, this prior reprimand involved a Canon 5 violation. Additionally, Fay is an experienced lawyer who should be intimately familiar with the rules relating to dual representation, especially after his prior reprimand. Finally, we give respectful consideration to the commission's recommendation. Committee on Prof'l Ethics *327 & Conduct v. Humphrey, 529 N.W.2d 255, 258 (Iowa 1995).
Considering all the circumstances, we agree with the recommendation of the commission. We suspend the license of Michael W. Fay to practice law in Iowa with no possibility of reinstatement for one month from the filing of this opinion. The suspension shall apply to all aspects of the practice of law. See Ct. R. 118.12. Any application for reinstatement shall be governed by court rule 118.18.
Costs are assessed to Fay under court rule 118.22.
LICENSE SUSPENDED.
McGIVERIN, Senior Judge,[*] participates in place of CARTER, J., who takes no part.
NOTES
[*] Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).