**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD, Appellee,**

v.

**Robert CLAUSS, Jr., Appellant.**

No. 05–1133.

Supreme Court of Iowa.

Feb. 17, 2006.

Rehearing Denied March 29, 2006.

Michael J. Carroll of Babich, Goldman, Cashatt & Renzo, P.C., Des Moines, for appellant.

Charles L. Harrington and Wendell Harms, Des Moines, for appellee.

LARSON, Justice.

Robert Clauss, Jr., was cited by our attorney disciplinary board for violations of our code of professional ethics in two respects: his notarization of documents without a valid notary commission and attempting to simultaneously represent two clients with potentially adverse interests. The Grievance Commission of this court concluded that the violations were established by the board and recommended suspension of Clauss's license for not less

than ninety days. We affirm the findings of code violations, but increase the suspension to a minimum of six months.

## I. *The Expired Notary Public Commission.*

■ The board charged that Clauss notarized nine documents between 1996 and 2000 while his notary commission was expired. The commission concluded that the board proved this charge and that this conduct amounted to misrepresentation under DR 1–102(A)(6) (conduct adversely reflecting on fitness to practice law). The commission concluded, however, that his conduct was not intentional, that real estate transactions were not involved, and that no party had been harmed. It recommended a public reprimand for this violation. We agree that the board proved this violation and consider that along with the conflict-of-interest violations in imposing discipline.

## II. *The Conflict–of–Interest Issue.*

■ The second count of the board's complaint involved a tale of two clients—both of them represented by Clauss despite their conflicting interests. The first client was National Management Corporation, which retained Clauss to collect past-due rental payments from Clauss's second client, Kay Clark.

Clauss called Clark to try to arrange payment of her debt to National. In the course of their conversation, Clark told Clauss she had problems of her own: she had breached a covenant not to compete with a previous employer and had been enjoined from running her competing professional recruitment business. As a result of the conversation, it was decided

that Clauss could possibly represent Clark in attempting to get the injunction lifted. That way Clark could operate her business and generate income to apply toward National's judgment against her.[1]

Although the plan appeared to be beneficial to all involved, Clauss saw, with good reason, that problems could arise from this dual representation. He contacted a lawyer more experienced in ethics cases to inquire about whether to proceed and, if so, how to avoid ethical problems. That attorney advised Clauss that he could, consistently with our ethics rules, represent both Clark and National, provided he obtained waivers from both of them. Clauss wrote a letter to Clark concerning a possible waiver:

> I am asking you to waive any conflict I may have in representing you in your covenant not to compete case and National Mgt. Corp. at the same time when you are a debtor of National Mgt. Corp. Ethically, I simply wanted to bring this matter to your attention by way of full disclosure. I spoke with Jerry Woods [acting on behalf of National] and he has no problems under these circumstances. I am sending Jerry an identical letter.

Clauss wrote a similar, but not identical, letter to National, stating:

> Per our telephone conversation, I am asking that you waive any conflict I may have in representing you and Kay Clark ... at the same time who is a debtor of National Mgt. Corp. Ethically, I simply wanted to bring this matter to your attention by way of full disclosure. I spoke with Kay Clark and she has no problems under these circumstances. I am sending her an identical letter.

---

1. It is not clear who initiated the idea. The board alleged that Clauss had initiated it and charged him with solicitation in violation of DR 2–103(A) and DR 2–104(A). We agree with the commission that the board did not prove its solicitation charge because the record was unclear about who proposed this arrangement.

Both National and Clark agreed to waive any conflict, pursuant to Clauss's suggestion.

Despite Clauss's efforts to obtain valid waivers, they were insufficient under our rules. Our disciplinary rules are quite clear on a lawyer's responsibilities under these circumstances:

A lawyer shall decline proffered employment if the exercise of independent professional judgment on behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(D).

DR 5–105(B). A waiver of a conflict of interest is not valid unless the attorney has made a full disclosure of the possible consequences of dual representation.

In the situations covered by DR 5–105(B) ..., a lawyer may represent multiple clients if it is obvious that the lawyer can adequately represent the interest of each and if each consents to the representation *after full disclosure of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each.*

DR 5–105(D) (emphasis added).

This is a poster case for the introductory rule to DR 5, which is aimed at preventing a lawyer from accepting employment if it puts his own financial interests in conflict with his client's. Entitled "Refusing Employment When the Interests of the Lawyer May Impair the Lawyer's Independent Professional Judgment," that rule provides:

Except with the consent of the client after full disclosure, a lawyer shall not accept employment if the exercise of the lawyer's professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's *own finan-cial, business, property, or personal interests.*

DR 5–101(A) (emphasis added).

An unconflicted lawyer working on behalf of National would have discovered, perhaps through a debtor's examination, where Clark had deposits or accounts receivable that could be subjected to payment on National's judgment. Clauss did not do that. In fact, as of the time of the commission hearing, he had not remitted any funds to National from Clark, despite the fact he had collected substantial sums for Clark by pursuing claims for her against other parties and had received attorney fees for himself on those collections.

This respondent was required to do more than simply warn his clients that there were potential conflicts and ask them to waive those conflicts. His actions involved conflicts between his clients, prohibited by DR 5–105(B), (C), and (D), and he undertook representation of both clients without making "full disclosure of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each," as required by DR 5–105(D). We have said,

[i]n a dual representation situation, it is not enough for a lawyer simply to inform the client that the lawyer is representing both sides. Full disclosure under DR 5–105(D) requires the

attorney not only to inform the prospective client of the attorney's relationship with the [other client], but also to explain in detail the pitfalls that may arise in the course of the transaction which would make it desirable that the [prospective client] obtain independent counsel.

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Wagner*, 599 N.W.2d 721, 728 (Iowa 1999) (quoting *In re Dolan*, 76 N.J. 1, 384 A.2d 1076, 1080 (1978)).

We conclude the respondent violated DR 5–101(A) (prohibiting acceptance of employment if the lawyer's professional judgment will reasonably be affected by the lawyer's own financial, property, or personal interests); DR 5–105(C) (providing that a lawyer shall not continue multiple employment if his exercise of professional judgment is likely to be adversely affected by the representation of another client); and DR 5–105(D) (requiring full disclosure of possible effects of multiple representation).

### III. *Discipline.*

■ We note, as an aggravating factor in determining the discipline to be imposed, that National was harmed financially because apparently it did not ever get any of the money that Clauss ultimately collected for Clark in other cases in which Clauss represented her. Presumably, National did not obtain another attorney to act for it because Clauss had preempted that responsibility. *See Wagner,* 599 N.W.2d at 730 (harm to client considered as aggravating factor); *Comm. on Prof'l Ethics & Conduct v. Baker,* 269 N.W.2d 463, 466 (Iowa 1978) (same).

We also consider prior discipline. *Wagner,* 599 N.W.2d at 730; *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Clauss,* 530 N.W.2d 453, 455 (Iowa 1995). In 1989 Clauss was suspended for six months for income tax violations, making false statements to our client security commission, failing to properly monitor a client's trust account, and commingling his clients' money with his office account. *Comm. on Prof'l Ethics & Conduct v. Clauss,* 445 N.W.2d 758 (Iowa 1989). In 1991 he was reprimanded for obtaining a default judgment, based on a material misrepresentation of fact, against a collection debtor who had already paid the account. *Comm. on Prof'l Ethics & Conduct v. Clauss,* 468 N.W.2d 213 (Iowa 1991). In 1995 he was suspended for a minimum of three years for falsely signing his wife's name to a return of service, falsely notarizing it, and for withdrawing a client's trust funds to pay his own fees, even though the fee was disputed. In that case, we expressed this concern about the future of the respondent's law practice:

If and when Clauss applies for readmission he should be prepared to convince us he will pose no threat to the public or to the reputation of the legal profession. *Clauss,* 530 N.W.2d at 455.

We are, of course, concerned with the maintenance of some degree of consistency in our disciplinary cases as far as sanctions are concerned. *See Iowa Supreme Ct. Attorney Disciplinary Bd. v. Howe,* 706 N.W.2d 360, 381 (Iowa 2005). Both *Howe* and *Iowa Supreme Court Attorney Disciplinary Board v. Zenor,* 707 N.W.2d 176 (Iowa 2005), involved attorneys who were simultaneously acting in their prosecuting capacity and also representing criminal defendants. We imposed minimum suspensions of four months in those cases. In *Committee on Professional Ethics & Conduct v. Carty,* 515 N.W.2d 32 (Iowa 1994), a lawyer was engaged in a series of transactions with his client without securing independent counsel. We held that a public reprimand was sufficient. In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Fay,* 619 N.W.2d 321 (Iowa 2000), an attorney entered into a business transaction with his client without advising the client of a possible conflict of interest or the need for independent counsel. We suspended his license for thirty days.

An attorney who had conflicts by borrowing money from ex-clients without advising them of the need for independent counsel and alternatively representing both a husband and wife in a dissolution action was suspended for a period of three

months. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Walters,* 603 N.W.2d 772, 778 (Iowa 1999). In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Bisbee,* 601 N.W.2d 88, 91 (Iowa 1999), a lawyer who took advantage of an elderly client by entering into a business agreement with her and collecting an exorbitant share of the profits from their joint venture was suspended for a minimum of three years. In *Wagner,* 599 N.W.2d at 721, the lawyer, who represented both the buyer and seller of property, failed to divulge to the buyer that the attorney had an interest in the transaction and failed to insist that the buyer obtain independent counsel. We suspended his license for a minimum of three months. A lawyer who violated conflict-of-interest rules and who had been disciplined before was suspended for a minimum of two months in *Iowa Supreme Court Board of Professional Ethics & Conduct v. Winkel,* 599 N.W.2d 456 (Iowa 1999). In a more egregious case, *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stamp,* 590 N.W.2d 496 (Iowa 1999), an attorney representing an estate purchased estate assets for considerably less than their value without obtaining court approval and concealed the matter in the estate's final report. We suspended his license for a minimum of one year. In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Isaacson,* 565 N.W.2d 315 (Iowa 1997), the lawyer misstated material facts regarding a client's purchase of property owned by the lawyer and failed to divulge substantial conflicts of interest. We suspended his license for six months.

### IV. *Disposition.*

We give respectful consideration to the recommendation of the Grievance Commission, but are not bound by it. *Bisbee,* 601 N.W.2d at 90. We affirm the commission's findings that the respondent violated DR 1–102(A)(6), by acting as a notary without a valid notary commission, and DR 5–101(A), by accepting employment when the exercise of professional judgment may be affected by his own financial interests. In addition, he violated DR 5–105(C) by failing to avoid multiple-client employment when the exercise of professional judgment may be affected and DR 5–105(D) by failing to make full disclosure of possible effects of multiple-client representation.

Based on these violations, exacerbated by the fact that the respondent benefited financially from his representation of a second client at the expense of the first, and together with his extensive history of disciplinary infractions, we conclude that the ninety-day suspension recommended by the commission is insufficient. Accordingly, we suspend Robert Clauss's license to practice law in this state indefinitely with no possibility of reinstatement for a period of six months from the date of the filing of this opinion. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.12(3). Upon application for reinstatement, Clauss shall have the burden to establish that he has not practiced during the period of suspension, that he meets all requirements of Iowa Court Rule 35.13, and that he has paid the costs of this proceeding as taxed to him.

**LICENSE SUSPENDED.**