IN THE SUPREME COURT OF IOWA

 No. 144 / 05-1133

 Filed February 17, 2006

IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,

 Appellee,

vs.

ROBERT CLAUSS, JR.,

 Appellant.

 On review of the report of the Grievance Commission.

 Attorney appeals from findings and recommendations of Grievance
Commission. LICENSE SUSPENDED.

 Michael J. Carroll of Babich, Goldman, Cashatt & Renzo, P.C.,
Des Moines, for appellant.

 Charles L. Harrington and Wendell Harms, Des Moines, for appellee.

LARSON, Justice.
 Robert Clauss, Jr., was cited by our attorney disciplinary board for
violations of our code of professional ethics in two respects: his
notarization of documents without a valid notary commission and attempting
to simultaneously represent two clients with potentially adverse interests.
 The Grievance Commission of this court concluded that the violations were
established by the board and recommended suspension of Clauss’s license for
not less than ninety days. We affirm the findings of code violations, but
increase the suspension to a minimum of six months.
 I.  The Expired Notary Public Commission.
 The board charged that Clauss notarized nine documents between 1996
and 2000 while his notary commission was expired. The commission concluded
that the board proved this charge and that this conduct amounted to
misrepresentation under DR 1—102(A)(6) (conduct adversely reflecting on
fitness to practice law). The commission concluded, however, that his
conduct was not intentional, that real estate transactions were not
involved, and that no party had been harmed. It recommended a public
reprimand for this violation. We agree that the board proved this
violation and consider that along with the conflict-of-interest violations
in imposing discipline.
 II.  The Conflict-of-Interest Issue.
 The second count of the board’s complaint involved a tale of two
clients—both of them represented by Clauss despite their conflicting
interests. The first client was National Management Corporation, which
retained Clauss to collect past-due rental payments from Clauss’s second
client, Kay Clark.
 Clauss called Clark to try to arrange payment of her debt to
National. In the course of their conversation, Clark told Clauss she had
problems of her own: she had breached a covenant not to compete with a
previous employer and had been enjoined from running her competing
professional recruitment business. As a result of the conversation, it was
decided that Clauss could possibly represent Clark in attempting to get the
injunction lifted. That way Clark could operate her business and generate
income to apply toward National’s judgment against her.[1]
 Although the plan appeared to be beneficial to all involved, Clauss
saw, with good reason, that problems could arise from this dual
representation. He contacted a lawyer more experienced in ethics cases to
inquire about whether to proceed and, if so, how to avoid ethical problems.
 That attorney advised Clauss that he could, consistently with our ethics
rules, represent both Clark and National, provided he obtained waivers from
both of them. Clauss wrote a letter to Clark concerning a possible waiver:

 I am asking you to waive any conflict I may have in representing you
 in your covenant not to compete case and National Mgt. Corp. at the
 same time when you are a debtor of National Mgt. Corp. Ethically, I
 simply wanted to bring this matter to your attention by way of full
 disclosure. I spoke with Jerry Woods [acting on behalf of National]
 and he has no problems under these circumstances. I am sending Jerry
 an identical letter.

Clauss wrote a similar, but not identical, letter to National, stating:

 Per our telephone conversation, I am asking that you waive any
 conflict I may have in representing you and Kay Clark . . . at the
 same time who is a debtor of National Mgt. Corp. Ethically, I simply
 wanted to bring this matter to your attention by way of full
 disclosure. I spoke with Kay Clark and she has no problems under
 these circumstances. I am sending her an identical letter.

Both National and Clark agreed to waive any conflict, pursuant to Clauss’s
suggestion.
 Despite Clauss’s efforts to obtain valid waivers, they were
insufficient under our rules. Our disciplinary rules are quite clear on a
lawyer’s responsibilities under these circumstances:

 A lawyer shall decline proffered employment if the exercise of
 independent professional judgment on behalf of a client will be or is
 likely to be adversely affected by the acceptance of the proffered
 employment, except to the extent permitted under DR 5—105(D).

DR 5—105(B). A waiver of a conflict of interest is not valid unless the
attorney has made a full disclosure of the possible consequences of dual
representation.

 In the situations covered by DR 5—105(B) . . ., a lawyer may represent
 multiple clients if it is obvious that the lawyer can adequately
 represent the interest of each and if each consents to the
 representation after full disclosure of the possible effect of such
 representation on the exercise of the lawyer’s independent
 professional judgment on behalf of each.

DR 5—105(D) (emphasis added).
 This is a poster case for the introductory rule to DR 5, which is
aimed at preventing a lawyer from accepting employment if it puts his own
financial interests in conflict with his client’s. Entitled “Refusing
Employment When the Interests of the Lawyer May Impair the Lawyer’s
Independent Professional Judgment,” that rule provides:

 Except with the consent of the client after full disclosure, a lawyer
 shall not accept employment if the exercise of the lawyer’s
 professional judgment on behalf of the client will be or reasonably
 may be affected by the lawyer’s own financial, business, property, or
 personal interests.

DR 5—101(A) (emphasis added).
 An unconflicted lawyer working on behalf of National would have
discovered, perhaps through a debtor’s examination, where Clark had
deposits or accounts receivable that could be subjected to payment on
National’s judgment. Clauss did not do that. In fact, as of the time of
the commission hearing, he had not remitted any funds to National from
Clark, despite the fact he had collected substantial sums for Clark by
pursuing claims for her against other parties and had received attorney
fees for himself on those collections.
 This respondent was required to do more than simply warn his clients
that there were potential conflicts and ask them to waive those conflicts.
His actions involved conflicts between his clients, prohibited by
DR 5—105(B), (C), and (D), and he undertook representation of both clients
without making “full disclosure of the possible effect of such
representation on the exercise of the lawyer’s independent professional
judgment on behalf of each,” as required by DR 5—105(D). We have said,

 [i]n a dual representation situation, it is not enough for a
 lawyer simply to inform the client that the lawyer is representing
 both sides. Full disclosure under DR 5—105(D) requires the

 attorney not only to inform the prospective client of the
 attorney’s relationship with the [other client], but also to
 explain in detail the pitfalls that may arise in the course of
 the transaction which would make it desirable that the
 [prospective client] obtain independent counsel.

Iowa Supreme Ct. Bd. of Prof’l Ethics & Conduct v. Wagner, 599 N.W.2d 721,
728 (Iowa 1999) (quoting In re Dolan, 384 A.2d 1076, 1080 (N.J. 1978)).
 We conclude the respondent violated DR 5—101(A) (prohibiting
acceptance of employment if the lawyer’s professional judgment will
reasonably be affected by the lawyer’s own financial, property, or personal
interests); DR 5—105(C) (providing that a lawyer shall not continue
multiple employment if his exercise of professional judgment is likely to
be adversely affected by the representation of another client); and
DR 5—105(D) (requiring full disclosure of possible effects of multiple
representation).
 III.  Discipline.
 We note, as an aggravating factor in determining the discipline to be
imposed, that National was harmed financially because apparently it did not
ever get any of the money that Clauss ultimately collected for Clark in
other cases in which Clauss represented her. Presumably, National did not
obtain another attorney to act for it because Clauss had preempted that
responsibility. See Wagner, 599 N.W.2d at 730 (harm to client considered
as aggravating factor); Comm. on Prof’l Ethics & Conduct v. Baker, 269
N.W.2d 463, 466 (Iowa 1978) (same).
 We also consider prior discipline. Wagner, 599 N.W.2d at 730; Iowa
Supreme Ct. Bd. of Prof’l Ethics & Conduct v. Clauss, 530 N.W.2d 453, 455
(Iowa 1995). In 1989 Clauss was suspended for six months for income tax
violations, making false statements to our client security commission,
failing to properly monitor a client’s trust account, and commingling his
clients’ money with his office account. Comm. on Prof’l Ethics & Conduct
v. Clauss, 445 N.W.2d 758 (Iowa 1989). In 1991 he was reprimanded for
obtaining a default judgment, based on a material misrepresentation of
fact, against a collection debtor who had already paid the account. Comm.
on Prof’l Ethics & Conduct v. Clauss, 468 N.W.2d 213 (Iowa 1991). In 1995
he was suspended for a minimum of three years for falsely signing his
wife’s name to a return of service, falsely notarizing it, and for
withdrawing a client’s trust funds to pay his own fees, even though the fee
was disputed. In that case, we expressed this concern about the future of
the respondent’s law practice:

 If and when Clauss applies for readmission he should be prepared to
 convince us he will pose no threat to the public or to the reputation
 of the legal profession.

Clauss, 530 N.W.2d at 455.
 We are, of course, concerned with the maintenance of some degree of
consistency in our disciplinary cases as far as sanctions are concerned.
See Iowa Supreme Ct. Attorney Disciplinary Bd. v. Howe, 706 N.W.2d 360, 381
(Iowa 2005). Both Howe and Iowa Supreme Court Attorney Disciplinary Board
v. Zenor, 707 N.W.2d 176 (Iowa 2005), involved attorneys who were
simultaneously acting in their prosecuting capacity and also representing
criminal defendants. We imposed minimum suspensions of four months in
those cases. In Committee on Professional Ethics & Conduct v. Carty, 515
N.W.2d 32 (Iowa 1994), a lawyer was engaged in a series of transactions
with his client without securing independent counsel. We held that a public
reprimand was sufficient. In Iowa Supreme Court Board of Professional
Ethics & Conduct v. Fay, 619 N.W.2d 321 (Iowa 2000), an attorney entered
into a business transaction with his client without advising the client of
a possible conflict of interest or the need for independent counsel. We
suspended his license for thirty days.
 An attorney who had conflicts by borrowing money from ex-clients
without advising them of the need for independent counsel and alternatively
representing both a husband and wife in a dissolution action was suspended
for a period of three months. Iowa Supreme Ct. Bd. of Prof’l Ethics &
Conduct v. Walters, 603 N.W.2d 772, 778 (Iowa 1999). In Iowa Supreme Court
Board of Professional Ethics & Conduct v. Bisbee, 601 N.W.2d 88, 91 (Iowa
1999), a lawyer who took advantage of an elderly client by entering into a
business agreement with her and collecting an exorbitant share of the
profits from their joint venture was suspended for a minimum of three
years. In Wagner, 599 N.W.2d at 721, the lawyer, who represented both the
buyer and seller of property, failed to divulge to the buyer that the
attorney had an interest in the transaction and failed to insist that the
buyer obtain independent counsel. We suspended his license for a minimum
of three months. A lawyer who violated conflict-of-interest rules and who
had been disciplined before was suspended for a minimum of two months in
Iowa Supreme Court Board of Professional Ethics & Conduct v. Winkel, 599
N.W.2d 456 (Iowa 1999). In a more egregious case, Iowa Supreme Ct. Bd. of
Prof’l Ethics & Conduct v. Stamp, 590 N.W.2d 496 (Iowa 1999), an attorney
representing an estate purchased estate assets for considerably less than
their value without obtaining court approval and concealed the matter in
the estate’s final report. We suspended his license for a minimum of one
year. In Iowa Supreme Court Board of Professional Ethics & Conduct v.
Isaacson, 565 N.W.2d 315 (Iowa 1997), the lawyer misstated material facts
regarding a client’s purchase of property owned by the lawyer and failed to
divulge substantial conflicts of interest. We suspended his license for
six months.
 IV.  Disposition.
 We give respectful consideration to the recommendation of the
Grievance Commission, but are not bound by it. Bisbee, 601 N.W.2d at 90.
We affirm the commission’s findings that the respondent violated
DR 1—102(A)(6), by acting as a notary without a valid notary commission,
and DR 5—101(A), by accepting employment when the exercise of professional
judgment may be affected by his own financial interests. In addition, he
violated DR 5—105(C) by failing to avoid multiple-client employment when
the exercise of professional judgment may be affected and DR 5—105(D) by
failing to make full disclosure of possible effects of multiple-client
representation.
 Based on these violations, exacerbated by the fact that the
respondent benefited financially from his representation of a second client
at the expense of the first, and together with his extensive history of
disciplinary infractions, we conclude that the ninety-day suspension
recommended by the commission is insufficient. Accordingly, we suspend
Robert Clauss’s license to practice law in this state indefinitely with no
possibility of reinstatement for a period of six months from the date of
the filing of this opinion. This suspension applies to all facets of the
practice of law. See Iowa Ct. R. 35.12(3). Upon application for
reinstatement, Clauss shall have the burden to establish that he has not
practiced during the period of suspension, that he meets all requirements
of Iowa Court Rule 35.13, and that he has paid the costs of this proceeding
as taxed to him.
 LICENSE SUSPENDED.
-----------------------
 [1]It is not clear who initiated the idea. The board alleged that
Clauss had initiated it and charged him with solicitation in violation of
DR 2—103(A) and DR 2—104(A). We agree with the commission that the board
did not prove its solicitation charge because the record was unclear about
who proposed this arrangement.