IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS & CONDUCT, Complainant,

v.

Mark S. BECKMAN, Respondent.

No. 96–1152.

Supreme Court of Iowa.

Dec. 18, 1996.

Norman G. Bastemeyer, David J. Grace, and Charles L. Harrington, Des Moines, for complainant.

Mark S. Beckman, Dubuque, pro se.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and TERNUS, JJ.

LAVORATO, Justice.

The Iowa Board of Professional Ethics & Conduct (board) charged attorney Mark S. Beckman with violating our disciplinary rules on advertising and making a false statement to the board. Following a disciplinary hearing, a division of the Iowa Supreme Court Grievance Commission (commission) found there was sufficient evidence to substantiate the charges. The commission recommended we suspend Beckman's license for three months. On our review, we agree.

Our review is de novo. Iowa Sup. Ct.R. 118.10. Although we give respectful consideration to commission recommendations, we ultimately decide what discipline is appropriate under the unique facts of each case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gottschalk*, 553 N.W.2d 322, 323 (Iowa 1996). The board must prove its allegations of lawyer misconduct by a convincing preponderance of the evidence. This burden of proof is greater than that in a civil case but less than that in a criminal case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Postma*, 555 N.W.2d 680, 681 (Iowa 1996).

Beckman is an attorney licensed to practice law in Iowa. He resides and practices law in Dubuque County.

Beckman is under contract with Hyatt Legal Services to provide legal services to John Deere employees. Hyatt furnishes a prepaid legal insurance plan to various organizations including John Deere. In early 1994 Beckman mailed marketing letters to certain John Deere employees. These letters, under Beckman's office letterhead, stated:

Dear _____:

Hyatt Legal Services (a provider of legal insurance to John Deere employees) has expanded its coverage to all John Deere employees.

If you have any questions please feel free to call and I will be happy to be of assistance to you!

Sincerely yours,

[signed]

Mark S. Beckman

Attorney at Law

These letters did not contain the disclosure or words "advertising only" required by our disciplinary rules on advertising. *See* Iowa Code of Professional Responsibility DR 2–101(A) (all advertising must contain the following disclosure: "The determination of the need for legal services and the choice of a lawyer are extremely important decisions and should not be based solely on advertisements or self-proclaimed expertise. This disclosure is required by rule of the Supreme Court of Iowa."); DR 2–101(B)(4)(d) (written solicitation or direct mail must contain the following disclosures in red ink in 9–point or larger type: **"ADVERTISEMENT ONLY"**). Nor did Beckman file a copy of this letter with the administrator of the board. *See* Iowa Code of Professional Responsibility DR 2–101(B)(4)(d).

Responding to an inquiry from the board, Beckman stated:

This letter went out only to CLIENTS for whom I have and continue to provide services under the Hyatt Legal Plan since 1989. Herewith [is] a 23 page list of my Hyatt CLIENTS.

Each one of these current clients was from my own records and not generally sent out haphazardly to the general public of unknown individuals.

In response to a request for admissions, Beckman again stated he sent the letter only to his clients. Beckman argued, therefore, that he was not required to abide by the

attorney advertising rules because he was simply corresponding with current clients and not advertising to bring in new clients.

Whether Beckman sent this letter to current clients only, therefore, became the fighting issue both as to the applicability of the attorney advertising rules and as to his truthfulness in his response to the board. Beckman assumes the advertising rules do not apply to communications with current clients. We have never addressed this issue. For purposes of resolving the issue of whether Beckman was truthful, we assume without deciding that such rules do not apply to communications with current clients.

At the disciplinary hearing, the board focused entirely on the marketing letter Beckman sent to a John Deere employee and his wife, Steve and Carla Grant. Beckman testified that Steve had called him in May 1993, requesting that Beckman draft wills for the Grants. The Grants testified that they did not remember calling Beckman for any reason and that such a call was highly unlikely.

The commission found that the Grants were credible witnesses and found that Beckman was not. The commission expressly found that Beckman was not truthful and that the Grants were never his clients.

Notwithstanding these findings, Beckman produced evidence which tends to support his claim that Steve called requesting wills in May 1993. Beckman introduced wills he claimed he had prepared for the Grants. The wills, however, are incomplete and unexecuted. Beckman conceded the Grants made no followup calls or visits to execute the wills.

Beckman also introduced billings he claimed to have sent Hyatt for preparing the wills. The billings reflect Steve's social security number, a number Hyatt requires for all such billings. Beckman steadfastly maintained that Steve gave him the number in the May 1993 telephone call.

■ We hesitate to say there is a convincing preponderance of evidence that Steve Grant never made the May 1993 call to request Beckman's services. Beckman's statement to the commission that the Grants were "current clients" when he sent the letter is a different matter. We find such statement

was false and that Beckman should have known it was false. In his testimony, Beckman contradicted himself as to whether the Grants were current clients at the time the letter was mailed. At one point he testified the Grants were "of course not" current clients at the time of the mailing. Later, Beckman employed an overbroad definition of "current client" in responding to a question:

Q. You could have had a five-minute telephone conversation with somebody you never arranged to meet and never sent anything to, somebody who never saw your bill and obviously decided they didn't want this, you would call that person your client? A. If work had been done for them, yea....

We think Beckman was right the first time: the Grants were not current clients at the time he mailed the letter. In a supplemental statement to us, Beckman concedes this point:

I will admit that my marketing letter was ill-advised. Steve and Carla were not "current clients" but they had been clients and so I felt I was not in error for sending such. Obviously I was wrong! Should I be suspended for such or disbarred? That is out of my hands.

According to this statement and Beckman's testimony, the Grants *had* been his clients. That, however, is far different from saying that the Grants were current clients for whom Beckman was continuing to provide legal services when he sent the marketing letter to them.

In making this false statement to the commission, Beckman violated Iowa Code of Professional Responsibility DR 1–102(A)(1) (lawyer shall not violate a disciplinary rule); DR 1–102(A)(4) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(5) (lawyer shall not engage in conduct that is prejudicial to the administration of justice); DR 1–102(A)(6) (lawyer shall not engage in any other conduct that adversely reflects on lawyer's fitness to practice law).

The Grants were not Beckman's current clients when he mailed the 1994 marketing

letter to them. He therefore has no defense to the charge of violating the disciplinary rules on advertising. In sending the letter to the Grants, Beckman violated the following disciplinary rules on advertising: DR 2–101(A) and DR 2–101(B)(4)(d).

Twice in the past Beckman has been publicly reprimanded for violating our disciplinary rules on advertising. Our disciplinary rules are designed to deter others from engaging in such acts. They are also designed to protect the integrity and public confidence in our system of justice. *Committee on Prof'l Ethics & Conduct v. Borchart,* 392 N.W.2d 491, 492 (Iowa 1986). Additionally, his false statement to the committee tends to erode the integrity and public confidence in our system of justice. Given the circumstances of this case, we think the sanction the commission recommended is appropriate.

We therefore suspend Beckman's license to practice law with no possibility of reinstatement for three months from the filing date of this opinion. This suspension shall apply to all facets of the practice of law. *See* Iowa Sup.Ct.R. 118.12. Any application for reinstatement shall be governed by Iowa Supreme Court Rule 118.13.

Costs are assessed to Beckman under Iowa Supreme Court Rule 118.22.

**LICENSE SUSPENDED.**