**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Dennis A. BJORKLUND, Respondent.**

**No. 00–566.**

Supreme Court of Iowa.

Sept. 7, 2000.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Dennis A. Bjorklund, Iowa City, respondent, pro se.

CADY, Justice.

This is a proceeding for final disposition from a recommendation by the Grievance Commission that Dennis A. Bjorklund be publicly reprimanded for violating certain advertising provisions in the Iowa Code of Professional Responsibility. On de novo review of the record, we agree with the finding of misconduct and recommended sanction by the commission.

## I. Background Facts and Proceedings.

Dennis A. Bjorklund is a lawyer who practices as a sole practitioner in Coralville, Iowa. He graduated from the University of Iowa Law School in 1992, and was admitted to practice law in Iowa in 1993. Bjorklund primarily engages in criminal defense and appellate practice. He was privately admonished by the Iowa Supreme Court Board of Professional Ethics and Conduct on two prior occasions for violating advertising provisions of the rules of professional responsibility. The first admonition occurred in 1995 and the second admonition was in 1996.

The present complaint brought before the commission centered on the following advertisement which appeared in four issues of a monthly publication called "Movie Facts," beginning in October 1998.

Have You Been Caught Drinking & Driving?

I CAN HELP!

DENNIS A. BJORKLUND
Attorney At Law

Author Of:

Drunk Driving Defense
"How To Beat The Rap"

(319) 466-7643

Call Now And
Mention This Ad
For Free Literature

"Movie Facts" is a pamphlet containing information about recently released movies. It is distributed to movie theatre patrons by approximately 1200 movie theatres around the country, including four movie theatres in the Iowa City area. It is printed on both sides of a 11 × 8-1/2 inch paper and is folded into a six-page pamphlet. The pamphlet also contains a variety of advertising. The advertising is generally tailored to each local distribution area. Iowa City and Coralville are one market area. The pamphlet urges readers to patronize the advertisers.

The Iowa Supreme Court Board of Professional Ethics and Conduct filed a complaint against Bjorklund based on the advertisement. The Board claimed the ad violated several provisions of the rules of professional conduct, including DR 2–101(A), DR 2–105(A)(3)(c), and DR 2–105(A)(4). Additionally, the Board claimed Bjorklund violated DR 1–102(A)(5) and (6) when he failed to respond to the Board's request for information.

The evidence at the commission hearing centered on Bjorklund's claim that he was not responsible for the contents of the ad because it was prepared and placed in the pamphlet by the publisher of a book he authored. Bjorklund claimed that the publisher did this to promote book sales. The book was called "Drunk Driving Defense: How to Beat the Rap" and was written by Bjorklund as an informational guide for non-lawyers. The publisher was Praetorian Publishers of Green Bay, Wisconsin.

Although Bjorklund placed sole responsibility for the advertisement on Praetorian Publishers, no representative from Praetorian presented evidence to the commission to detail the circumstances of the marketing scheme or the events which gave rise to the advertisement. Instead, the evidence was essentially confined to the advertisement itself, and an explanation from a representative of the Board about the contents of a recorded telephone message received by calling the telephone number in the advertisement. Bjorklund also explained his version of the events which led to the advertisement, and produced copies of letters he exchanged with a representative from Praetorian. The letters revealed Bjorklund and Praetorian had other communications which were not documented. Bjorklund could not recall some of these communications and did not explain others.

The documents produced by Bjorklund revealed he submitted an unsolicited book manuscript on "drunk driving" to Praetorian Publishers on January 11, 1998. The documents further indicated Praetorian promptly responded to Bjorklund on January 22, 1998, by sending him a written contract to publish the book. Bjorklund subsequently signed the contract which included the following clause:

> The publisher shall assume all costs of publication and marketing. The publisher is solely responsible for marketing the published manuscript, which is not subject to review by the author.

Despite the contract provision, Bjorklund suggested Praetorian advertise his book in "Movie Facts." This was apparently done sometime prior to September 1, 1998. Although Bjorklund testified he had not gone to a movie theatre since 1988, he was aware of the opportunity to advertise in "Movie Facts" through prior solicitations directed to his law office to purchase advertising space in the publication. On September 1, 1998, Praetorian sent a short one-paragraph letter to Bjorklund to confirm it would promote the book by advertising in "Movie Facts" but emphasized it would be "solely responsible for all aspects" of the promotion pursuant to the terms of the contract. The preceding day, however, Bjorklund wrote a letter to Praetorian to confirm the receipt of $775 in payment of the "outstanding balances and debts" as a result of their "business association." Bjorklund was unable to recall the nature of the debts or the reason Praetorian was obligated to pay him $775.

Praetorian published the book in the latter part of 1998, but did not sell any copies. On December 22, 1998, a few days after Bjorklund was contacted by the Board to explain the advertisement, Praetorian wrote Bjorklund to inform him the "Movie Facts" promotion had not produced any book orders and would be discontinued on January 31, 1999. Bjorklund, however, later informed the Board in a letter in response to the complaint that "the publisher was notified of the complaint and promptly ceased" all promotional advertisement in the pamphlet.

In the same letter to the Board, Bjorklund indicated the telephone number listed in the advertisement was a direct line to the publisher. The area code and prefix of the telephone number listed in the advertisement, however, covered the Coralville area. Except for the last two digits, it was the same number as the fax number for Bjorklund's office. The number provided a recorded message from Praetorian which gave the caller four options by pressing one of four numbers of the telephone. The message instructed the caller to press "1" to receive free literature, "2" for information on purchasing the book, "3" for a case evaluation, or "4" for other information. Nevertheless, there was no evidence presented from the telephone company showing the party responsible for the telephone number in the advertisement.

On May 12, 1999, the Board sent a letter to Bjorklund requesting him to identify the name and address of the publisher of the book and the name of any representative of the company. The letter was properly addressed to Bjorklund's law office and deposited in the United States mail. Bjorklund did not respond to the letter, and claimed he never received it. The Board did not send a follow-up letter after Bjorklund failed to respond.

A division of the Grievance Commission found Bjorklund was responsible for the advertisement. It also found the advertisement violated DR 2–101(A) (requiring advertisements to contain a disclosure statement and prohibiting statements or claims that are self-laudatory, unverifiable, or relate to the quality of the lawyer's legal services); DR 2–105(A)(3)(c) (requiring ads to include a notice to the public); and DR 2–105(A)(4) (requiring a lawyer to meet eligibility standards before advertising as practicing in a particular area of the law). It determined Bjorklund did not violate DR 1–102(A)(5) and (6) (conduct prejudicial to the administration of justice and reflecting adversely on the fitness to practice law). The commission found the Board failed to prove Bjorklund received the May 12, 1999 letter. The commission recommended Bjorklund be publicly reprimanded for violating the advertising rules.

## II. Standard of Review.

■ Our review is de novo. Iowa Sup.Ct. R. 118.10. Although we give respectful consideration to the commission recommendation, ultimately we decide what discipline is appropriate under the specific facts of each case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gottschalk*, 553 N.W.2d 322, 323 (Iowa 1996). Misconduct must be proven by a convincing preponderance of the evidence. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Beckman*, 557 N.W.2d 94, 95 (Iowa 1996).

## III. Lawyer Advertising.

■ We address the claim of misconduct based on a violation of the disciplinary rules on advertising by first considering the ad itself. Although the ad may be a veiled attempt to market the sale of a book, it contains a claim attributable to a lawyer which violates our disciplinary rules on advertising. The ad prominently displays Bjorklund's name and occupation as an attorney at law following the question "Have you been caught drinking and driving?" and the exclamation "I can help!" It does not offer the book for sale or necessarily promote the book as the source of help, but mainly refers to the book as a

means to validate the ability of Bjorklund to help.

On its face, the advertisement is a public communication containing a claim or statement attributable to a lawyer which is self-laudatory, relates to the quality of the lawyer's legal services, and is not verifiable. These types of claims and statements violate DR 2–101(A). *See* Charles W. Wolfram, *Modern Legal Ethics* § 14.2.4, at 782 (1986) [hereinafter Wolfram]. As lawyer advertising, it also fails to include the disclosure statement required under DR 2–101(A). Additionally, the advertisement implies Bjorklund practices in an area of law involving the criminal offense referred to as "drinking and driving." Bjorklund was not eligible to advertise as limiting his practice in any specific field of law at the time the advertisement appeared in the pamphlet. *See* DR 2–105(A). Furthermore, "drinking and driving" is not a permissible description of the nature of an attorney's practice or the type of cases handled by an attorney. *See* DR 2–105(A), (C).

■ Notwithstanding, Bjorklund claims he did not engage in misconduct under the disciplinary rules because he was not responsible for running the advertisement. He argues the ad was placed in the pamphlet by his book publisher to promote the book he authored.

The disciplinary rules governing lawyer advertising, like all of the disciplinary rules, apply only to lawyers. *See* Iowa Code of Professional Responsibility, Preliminary Statement. They do not apply to non-lawyers. *Id.* Moreover, they do not necessarily apply to lawyers who carry on business activities separate from the practice of law. *See* Wolfram, § 3.3.4, at 98 (a lawyer who runs a separate business should not necessarily be restricted to lawyer advertising rules).

■ On the other hand, lawyers may not circumvent the disciplinary rules through the actions of another. DR 1–102(A)(2). They may not insulate themselves from responsibility for activities governed under the disciplinary rules by contracting to have those activities performed by a non-lawyer. *Id.* Furthermore, lawyers must be vigilant when engaging in a business with non-lawyers to make sure the business transactions are not inconsistent with their duties as members of the Bar. *In re Rothman*, 12 N.J. 528, 97 A.2d 621, 635 (1953). If the transaction is governed by the disciplinary rules, including advertising rules, a lawyer must adhere to the rules.

■ Under our disciplinary rules, a lawyer is not only prohibited from using advertising in violation of the disciplinary rules, but must not participate in the use of such advertisement. *See* DR 2–101(A); *see generally* Debra T. Landis, Annotation, *Lawyer Publicity as Breach of Legal Ethics*, 4 A.L.R.4th 306 (1981). The degree of participation which gives rise to the responsibility for an advertisement under our disciplinary rules will ultimately depend upon the particular facts of each case. However, in considering the facts, it is important to recognize that lawyers are to avoid conduct which tests the disciplinary rules and are charged to aspire to a level of conduct which exceeds the minimum standards established by the rules to ensure the profession will always be marked by the highest degree of ethical conduct. Iowa Code of Professional Responsibility, Preliminary Statement. The future of the profession, ultimately, will be defined by the consciousness of each lawyer to meet this high goal.

Considering the limited evidence presented at the hearing, we agree with the commission that the Board failed to establish Bjorklund placed the advertisement in the "Movie Facts" publication. While the ad clearly resembles lawyer advertising and some of the evidence suggests Bjorklund's role in the advertisement was greater than he acknowledged, the Board failed to establish Bjorklund placed the ad in the publication by a clear preponderance of the evidence.

Nevertheless, there is ample evidence to support the conclusion Bjorklund participated in the use of the advertisement to give rise to responsibility under our disciplinary rules. Bjorklund was not an unwilling or unwitting participant in the advertisement. He authored a book on a legal subject and entered into a contract with the publisher to market the book. He engaged in a marketing discussion with the publisher and specifically suggested the book be advertised to the public in a specific medium disseminated in Iowa. Although a clear preponderance of the evidence did not show Bjorklund knew of the contents of the ad or that the contents would violate the disciplinary rules on lawyer advertising, his activities with the publisher imposed a responsibility on him to ensure the advertisement did not violate the disciplinary rules. We conclude Bjorklund participated in the use of the advertisement in violation of our disciplinary rules.

## IV. Failure to Respond.

▆▆ The repeated failure of a lawyer to respond to inquiries by the Board can constitute a separate ethics violation. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Freeman*, 603 N.W.2d 600, 602 (Iowa 1999); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Winkel*, 542 N.W.2d 252, 254 (Iowa 1996). Bjorklund did fail to respond to the May 12, 1999 inquiry for information about the publisher of the book, but claimed he never received the inquiry. Furthermore, the Board never made a second request for the information or notified Bjorklund they had not received a response to their initial request. Under these circumstances, we conclude Bjorklund did not commit misconduct by failing to respond to the inquiry.

## V. Discipline.

▆▆ We determine the sanction in an attorney disciplinary case based upon the circumstances of each case. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct*

*v. Carr*, 588 N.W.2d 127, 129 (Iowa 1999). We consider the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the Bar as a whole, and the violator's fitness to continue in the practice of law. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lemanski*, 606 N.W.2d 11, 14 (Iowa 2000). We also consider the existence of prior violations. *Id.*

▆▆ We had previously imposed a three-month suspension for the violation of the disciplinary rules on advertising by a lawyer who had two prior reprimands for violation of the disciplinary rules. *Beckman*, 557 N.W.2d at 97. In that case, however, we found the lawyer also made a false statement to the commission in his testimony. *Id.*

In this case, we are unable to conclude by a clear preponderance of the evidence that Bjorklund made any false statements while testifying before the commission. We find *Beckman* to be distinguishable for this reason. If Bjorklund's testimony had been contradicted by Praetorian Publishers or shown to be false, a more severe sanction would be warranted. Accordingly, we concur with the commission that the appropriate sanction under the circumstances is a public reprimand. We publicly reprimand Bjorklund for his misconduct.

Costs are assessed to Bjorklund under Supreme Court Rule 118.22.

## ATTORNEY REPRIMANDED.

All justices concur except NEUMAN, J., who takes no part.