# IN THE SUPREME COURT OF IOWA

No. 102 / 06-0082

Filed December 8, 2006

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

      Complainant,

vs.

**DENNIS BJORKLUND**,

      Respondent.

_____

On review of the report of the Grievance Commission.

Report of Iowa Supreme Court Grievance Commission recommends license revocation. **LICENSE REVOKED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

Dennis Bjorklund, Coralville, pro se.

**TERNUS, Chief Justice.**

The respondent, Dennis Bjorklund, is no stranger to the disciplinary process, having received two prior private admonitions and a prior public reprimand for violations of our advertising rules. In the matter before us, the Iowa Supreme Court Grievance Commission found that Bjorklund had violated numerous disciplinary rules based on a broad range of misconduct, including presenting misleading and false testimony in a prior disciplinary hearing and refusing to refund unearned fees to clients. The commission, with one member dissenting, recommends that Bjorklund's license be revoked. Given the serious and pervasive nature of Bjorklund's ethical missteps, we conclude he lacks the character required to practice law. Accordingly, we revoke his license to practice law in this state.

I. *The Commission's Report.*

In July 2005 the Iowa Supreme Court Disciplinary Board filed a complaint against Bjorklund, alleging eight separate instances of misconduct that violated the Iowa Code of Professional Responsibility for Lawyers. Bjorklund did not file an answer to the complaint, nor did he respond to requests for admissions. As a result, at the hearing on the board's complaint, the commission ruled that the allegations of the complaint were considered admitted. Notwithstanding the commission's ruling, the board offered exhibits and the testimony of several witnesses supporting the charges made in the complaint. Based on Bjorklund's failure to answer the complaint and the board's evidence, the commission found the board had proved each of its allegations of misconduct by a convincing preponderance of the evidence.

The commission was divided on the issue of the appropriate sanction. All members but one believed Bjorklund's license to practice law should be revoked. The majority relied on Bjorklund's prior disciplinary history and

also cited his "disturbing history of failing to respond and cooperate with necessary investigations initiated" by local and state disciplinary boards and his "deliberate effort . . . to mislead and deceive the Commission." One commission member recommended a twenty-four-month suspension coupled with significant prerequisites to reinstatement, including a psychological examination and passage of the bar exam.

II. *Scope of Review.*

Our review of the findings of the Grievance Commission is de novo. *Iowa Supreme Ct. Attorney Disciplinary Bd. v. McGrath*, 713 N.W.2d 682, 695 (Iowa 2006). When a lawyer fails to file an answer to the board's complaint or respond to requests for admissions, the allegations of the complaint are deemed admitted, as are the requests for admissions. Iowa Ct. R. 36.7; *Iowa Supreme Ct. Attorney Disciplinary Bd. v. Moonen*, 706 N.W.2d 391, 396 (Iowa 2005). Ethical violations must be proved by a convincing preponderance of the evidence. *Moonen*, 706 N.W.2d at 396. We now discuss each charge.

III. *Count I: Prior False Testimony.*

A. *Factual findings.* In count I, the board alleged Bjorklund gave false testimony at a prior hearing before the commission. In 2000 the board filed a complaint against Bjorklund claiming he violated our advertising rules by virtue of an advertisement appearing in a pamphlet entitled "Movie Facts." The advertisement implied that a person caught drinking and driving could be helped by Bjorklund. It noted Bjorklund had authored a book on drunk driving offenses, "Drunk Driving Defense: How to Beat the Rap," and it advised the reader to call a phone number shown in the ad.

At the hearing on this complaint, Bjorklund claimed he was not responsible for the ad. He testified he knew the publisher of his book, Praetorian Publishing, intended to place an ad in "Movie Facts," but

Bjorklund claimed he had no knowledge of the contents of the ad and had no involvement in its placement. Bjorklund also asserted the phone number in the ad was the publisher's line. At the hearing, Bjorklund stated he did not call the publisher to testify on his behalf because "Darcie—I think it was Baumgart—was out of town."

When the matter came before this court, we held the ad violated several disciplinary rules, but based on the limited evidence presented at the hearing, coupled with Bjorklund's denial of any active role in placing the ad, we concluded the board had failed to establish that Bjorklund was responsible for the ad. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bjorklund*, 617 N.W.2d 4, 9 (Iowa 2000). Nonetheless, we stated Bjorklund had a responsibility to ensure that the proposed advertisement of his book by the publisher did not violate the disciplinary rules. *Id.* at 10. Because he had failed to do so, he was publicly reprimanded for the improper advertisement. *Id.*

The evidence at the hearing on the current charge flatly contradicted Bjorkland's testimony in the prior proceeding. The more recent evidence was uncovered by the board when it began to investigate Bjorklund's relationship with Praetorian Publishing after receiving several complaints from persons who had received unsolicited advertising materials from Bjorklund bearing Praetorian Publishing's logo. The board discovered the post office box for Praetorian Publishing belonged to Rochelle Theroux who shared Bjorklund's residence and who had jointly owned this residence with him since 1997. As early as 1999, Theroux had a bank account in her name doing business as Praetorian Publishing. Qwest records for the phone number used by Praetorian Publishing showed that number was in Theroux's name and the telephone service was with "Dennis."

At the hearing on the "Movie Facts" complaint, Bjorklund introduced written communications with Praetorian Publishing that contained a Wisconsin address for the company. During the board's 2003 investigation, the board learned that the address on these documents was for a house rented by Darcie Baumgart, the individual identified by Bjorklund in the prior hearing as working for Praetorian Publishing. In fact, Darcie Baumgart was the long-time girlfriend of Bjorklund's brother, James.

In addition to these revelations, the board discovered a two-page document confirming that Bjorklund was, contrary to his denial at the previous hearing, *the* contact with "Movie Facts" for the advertisement that was the subject of that hearing. Other documents show that Theroux frequently corresponded with Morris Publishing (with whom she placed orders for Bjorklund's book) on Praetorian Publishing letterhead. The address used by Morris Publishing to correspond with Praetorian Publishing was often Bjorklund's law office address.

We conclude, as alleged by the board, that Bjorklund's testimony at the prior hearing was patently false, and he knew it was false. Moreover, the documents he provided to the board and the commission in connection with the prior disciplinary charge were fraudulent.

B. *Ethical violations.* Bjorklund's dishonesty at the prior hearing violated Iowa Code of Professional Responsibility for Lawyers DR 1-102(A)(4), (5), (6), which provides that "[a] lawyer shall not . . . [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation[,] [e]ngage in conduct that is prejudicial to the administration of justice[, or] [e]ngage in any other conduct that adversely reflects on the fitness to practice law." *See Comm. on Prof'l Ethics & Conduct v. Wenger*, 469 N.W.2d 678, 679 (Iowa 1991) (holding it is an ethical violation to lie in a disciplinary proceeding). In addition, Bjorklund's testimony under oath at the prior disciplinary

hearing violated Iowa Code section 720.2 (1999), which provides: "A person who, while under oath or affirmation in any proceeding, . . . knowingly makes a false statement of material facts . . . commits [perjury,] a class 'D' felony." Thus, Bjorklund violated DR 1-102(A)(3), prohibiting a lawyer from engaging "in illegal conduct involving moral turpitude."

IV. *Count I: Unverifiable and Self-Laudatory Publicity.*

A. *Factual findings.* In addition to the false representation claim made in count I, the board alleged certain statements on Bjorklund's website violated our rules regarding publicity. In particular, the board alleged the following statements were objectionable:

(1) "In fact, the [Bjorklund Law] Firm's scholarly achievements are unmatched by any other law firm."

(2) "Mr. Bjorklund is also the foremost authority on drunk driving defense."

(3) "[Bjorklund's] criminal defense practice became so successful that he was hand-selected from amongst all the Iowa attorneys to author books on Iowa Appellate Practice . . . and Drunk Driving Defense."

(4) "[Bjorklund Law Firm's] vast knowledge, experience, and expertise as well as their zealous and aggressive legal representation has resulted in overwhelmingly favorable results for clients."

There is no dispute that Bjorklund's website contained these statements.

B. *Ethical violations.* Disciplinary rule 2-101(A) states in pertinent part that a lawyer "shall not communicate with the public using statements that are false, deceptive, unfair or unverifiable [or] which contain any statement or claim relating to the quality of the lawyer's services." We have no hesitancy in concluding the statements on Bjorklund's website were improper and violated this rule.

V. *Count II: Unsolicited Advertising.*

A. *Factual findings.* The second count of the board's complaint alleges Bjorklund sent unsolicited advertising to persons who had been

charged with drunk driving. Three samples of the materials sent by Bjorklund were introduced into evidence. As noted above, these allegations were deemed established by virtue of Bjorklund's failure to answer the complaint.

B. *Ethical violations.* Disciplinary rule 2-101(B)(4) requires that a lawyer who wants to engage in written solicitation by direct mail because of an occurrence known to the lawyer must first file the proposed written documents with the board. In addition, DR 2-101(A) requires that such solicitations contain certain specified disclosures. Finally, direct mail envelopes must be marked in red ink in 9-point or larger type: "ADVERTISEMENT ONLY." *See* Iowa Code of Prof'l Responsibility DR 2-101(B)(4)(d). Bjorklund violated DR 2-101 because he did not file his materials with the board, they did not contain the required disclosures, and the envelope was not marked "advertisement only."

One of Bjorklund's mailings states: "Attorney Bjorklund has been specializing in drunk driving since 1993." Drunk driving defense is not an area of law that a lawyer may identify as one in which the lawyer practices. *See id.* DR 2-105(A). Consequently, Bjorklund also violated DR 2-105(A).

Disciplinary rule 2-103(A) provides that "[l]awyers shall not, except as authorized in DR 2-101, recommend employment of themselves . . . to a nonlawyer who has not sought advice regarding employment of a lawyer." Bjorklund's mailings clearly touted himself as the lawyer to hire if one were arrested for drunk driving. One solicitation, which began with the statement "FIVE THINGS TO CONSIDER WHEN SEARCHING FOR THE BEST DRUNK DRIVING ATTORNEY," lists Bjorklund's firm as one of only two firms in Iowa that had the distinction of having lawyers who had written books on drunk driving. The clear and intended implication is that the

recipient should employ Bjorklund to defend the drunk-driving charge. We find Bjorklund's unsolicited advertising also violated DR 2-103(A).

VI. *Count III: Misrepresentation.*

A. *Factual findings.* The third charge against Bjorklund involves representations he made to the board during its investigation of one of the advertising complaints made against him. As noted earlier, the unsolicited materials sent to individuals charged with drunk driving contained the Praetorian Publishing logo. When Bjorklund was asked about these materials by the board, he responded that he was unaware of the mailing and had nothing to do with Praetorian Publishing.[1] These statements were knowingly false, as Bjorklund's relationship to Praetorian Publishing was substantial.

B. *Ethical violations.* Bjorklund's misrepresentations to the board constituted a violation of DR 1-102(A)(4), (5), (6). We also think he violated DR 1-102(A)(2), which prohibits the circumvention of a disciplinary rule through the actions of another. By ostensibly having Praetorian Publishing author the improper advertising materials, Bjorklund sought to avoid compliance with our restrictions on lawyer advertising.

VII. *Count IV: Chris Young Matter.*

A. *Factual findings.* Chris Young paid Bjorklund $4000 to appeal a child support modification decision, making an initial payment of $1000 and thereafter paying $250 per month. When Young requested an accounting, Bjorklund wrote to Young, stating they had a flat fee

---

[1] In his written response to the board's inquiry, Bjorklund stated in part:

I have no knowledge of the mailing sent by Praetorian Publishing. I have no involvement with the company and have no contact with the organization's personnel. My only involvement was writing three drunk-driving books a few years ago. I have no business interest with Praetorian Publishing, no business ownership, nor any ties to the organization. Prior to this complaint, I have never witnessed this mailing.

agreement, that therefore Young was not entitled to an accounting, and if Young wanted an accounting, it would cost $500. Bjorklund also claimed Young owed an additional $1628 for expenses and threatened to withdraw from the appeal if this sum was not paid. Finally, Bjorklund claimed he had prepared a reply brief "as a courtesy" because that work was "not part of the original fee agreement." Bjorklund enclosed an engagement letter purportedly reflecting these terms.

Young responded in writing, stating Bjorklund told him at their initial meeting the cost to Young would be between three and five thousand dollars, no distinction was made between fees and expenses, no limitations were placed on the representation, and no written document memorializing their agreement was made. Later, wrote Young, Bjorklund represented to Young that the appeal would cost $4000, and Young agreed to pay that amount. After receiving Young's letter, Bjorklund agreed to stay in the case, but only until the appeal was completed.

We find Bjorklund agreed to accept a total fee of $4000 to handle Young's appeal. In addition, after the dispute arose as to the fee agreement, Bjorklund drafted and backdated an engagement letter that was inconsistent with the agreement he had made with his client.

B. *Ethical violations.* Bjorklund violated DR 9-102(B)(3) when he refused to provide an accounting to his client. *See id.* DR 9-102(B)(3) (requiring that a lawyer "[m]aintain complete records of all funds . . . of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them"); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Apland,* 577 N.W.2d 50, 55-56, 59 (Iowa 1998) (noting flat fee is nothing more than an advance fee, and "lawyers accepting advance fee payments must [provide their clients] with a complete accounting"). Bjorklund's violation of this disciplinary rule is particularly

egregious because he attempted to extort a $500 payment from his client for an accounting Bjorklund was ethically required to give. Bjorklund's preparation of a phony engagement letter is also a violation of DR 1-102(A)(4), prohibiting dishonesty, fraud, deceit, or misrepresentation and DR 1-102(A)(6), prohibiting "conduct that adversely reflects on the fitness to practice law."

VIII. *Count V: Jeffrey Seivert Matter.*

A. *Factual findings.* In July 1999 Jeffrey Seivert paid Bjorklund a $1500 advance fee to represent Seivert in a dissolution appeal. That same month Bjorklund filed a combined certificate with this court certifying that he had ordered the transcript from the court reporter and would pay for the transcript. The evidence established that no transcript was ordered at that time. Instead, three months later, as deadlines approached, Bjorklund demanded that Seivert pay an additional $800 and threatened that if Seivert did not do so, Bjorklund would withdraw from the case. Seivert promptly sent Bjorklund another $800 on October 25, 1999.

The court reporter first received a copy of the combined certificate in an envelope postmarked October 28, 1999. Although she completed the transcript on November 22, 1999, Bjorklund never paid her for it, and therefore, she did not deliver it to him. On December 6, 1999, this court gave Bjorklund five days to provide proof that he had paid the court reporter for the transcript or the appeal would be dismissed. Bjorklund did not provide the requested proof of payment, and the appeal was dismissed on January 12, 2000.

Thereafter, the court reporter continued to request payment for her services, but to no avail. Consequently, on October 27, 2000, she brought a small claims action against Bjorklund, who responded by filing a cross-petition against his client, Seivert. Seivert answered, claiming he had paid

Bjorklund $2300, that Bjorklund had never rendered an accounting, that Seivert was entitled to a refund as Bjorklund had said he could not work on the appeal until he had received the transcript, and Seivert had assumed the $2300 he paid covered the cost of the transcript. Eventually, the trial court entered judgment for the court reporter and against Bjorklund for $737 plus interest.

Bjorklund failed to pay the judgment, forcing the court reporter to file a petition for a judgment debtor's examination. Only after the court ordered Bjorklund to appear for the examination did he pay the court reporter, some three years after judgment had been entered against him.

B. *Ethical violations.* Bjorklund violated DR 9-102(B)(3), (4) when he failed to provide his client with an accounting and failed to deliver to his client funds belonging to the client. His wholesale neglect of his client's appeal is a violation of DR 6-101(A)(3) ("A lawyer shall not . . . [n]eglect a client's legal matter."). His misrepresentation to this court that he had ordered the transcript violated DR 1-102(A)(4). Finally, his conduct in neglecting the appeal and refusing to pay the court reporter for the transcript, even after judgment was rendered against him, was prejudicial to the administration of justice and adversely reflected on his fitness to practice law, in violation of DR 1-102(A)(5), (6).

IX. *Count VI: Terry Fisher Matter.*

A. *Factual findings.* Bjorklund was employed to defend Terry Fisher on an operating-while-intoxicated charge in August of 2003. Fisher paid a flat fee of $1500. Fisher eventually pled guilty and appeared in court on two occasions for his sentencing, only to learn that the matter had been continued. Both times, Bjorklund's office was aware of the continuance, but had not notified Fisher. After the second unnecessary trip to the courthouse, Fisher wrote to Bjorklund on February 16, 2004, stating he

wanted Bjorklund to withdraw from his case, requesting a refund of any unearned funds, and asking that his file be mailed to him. Bjorklund informed Fisher he was not entitled to a refund, although Bjorklund provided no accounting to document that conclusion. Bjorklund offered to send a copy of Fisher's file upon payment of $25 to cover copying and postage.

Fisher promptly filed a complaint with the Johnson County Bar Association. Bjorklund was notified of the complaint, but he failed to respond after being allowed two extensions of time to do so. After a hearing before the local disciplinary committee, which Bjorklund did not attend, the matter was referred to the state disciplinary board. In response to an inquiry from the board, Bjorklund claimed his staff unsuccessfully tried to notify Fisher of the postponements of his sentencing hearing. With respect to the fee, Bjorklund alleged he had earned the entire $1500 paid by Fisher. In addition to providing this explanation of his actions, Bjorklund filed a complaint with the board, claiming Raymond Tinnian, a contract attorney who worked for Bjorklund at the time, was solely responsible for the failure to notify Fisher the first time the sentencing hearing was postponed.

At the hearing before the commission, an affidavit was introduced from another contract attorney who worked for Bjorklund at the time, Theresa Seeberger. Seeberger stated she had been assigned to appear for Fisher at the first sentencing hearing, she did so, and she was informed by court personnel that the matter had been continued and that Bjorklund's office had been notified of that fact. We find Seeberger's affidavit to be more credible than the assertions made by Bjorklund.

B. *Ethical violations.* Bjorklund's failure to provide his client with an accounting was a violation of DR 9-102(B)(3) and his failure to return his client's file was a violation of DR 2-110(A)(2), which states "a lawyer shall

not withdraw from employment until    reasonable steps have been taken to . . . deliver[ ] to the client all papers and property to which the client is entitled." Bjorklund's failure to advise Fisher of the changes in the hearing date constituted neglect, in violation of DR 6-101(A)(3).  By failing to respond to the inquiries of the local bar association, Bjorklund violated DR 1-102(A)(5), (6) (conduct prejudicial to the administration of justice and conduct adversely reflecting on fitness to practice law). *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sullins*, 556 N.W.2d 456, 457 (Iowa 1996) (stating lawyer has duty to respond to local bar association ethics committee inquiries).  Finally, Bjorklund's misrepresentation of the facts surrounding the failure to notify Fisher of the first postponement is a violation of DR 1-102(A)(4), (5), (6).

X. *Count VII:  David Jutson Matter.*

A. *Factual findings.*  This charge is similar to the ones we have previously discussed.  David Jutson paid Bjorklund a flat fee of $4500 to represent him on some criminal charges.  Eventually, Jutson wrote to Bjorklund, asking him to withdraw, to provide Jutson with the file, and to return the unearned portion of Jutson's payment.  When Bjorklund did not respond, Jutson hired Raymond Tinnian to represent him and filed a complaint with the Johnson County Bar Association.  Bjorklund, consistent with his pattern of conduct, failed to respond to an inquiry from the local bar association.  Eventually, the matter was referred to the state disciplinary board.

After the disciplinary board notified Bjorklund of the Jutson complaint, Bjorklund responded, alleging Tinnian had handled Jutson's case.  Bjorklund claimed Tinnian had absconded with Jutson's file when Tinnian terminated his relationship with Bjorklund, and Tinnian had refused to return the file or to provide a detailed itemization and accounting

regarding Tinnian's work on Jutson's case. Bjorklund maintained that he could not provide an accounting without the requested information from Tinnian.

Jutson subsequently filed a small claims action against Bjorklund to obtain a refund. At the hearing on this claim, Bjorklund presented an itemized billing statement showing 32.8 hours of services at $150 per hour, plus "extraordinary expenses" for a total of $5043.58. It appeared this time was attributable to work performed by Bjorklund, as there was an entry on the statement for Tinnian followed by "??." Bjorklund had been hired sometime in November 2003 and was discharged on January 20, 2004. The court found Bjorklund's fee statement "simply not believable" and ordered Bjorklund to refund the entire amount of the fee, plus interest and costs.

B. *Ethical violations.* Bjorklund's failure to provide Jutson with an accounting and to refund any unearned fees was a violation of DR 9-102(B)(3), (4). His failure to return his client's file was a violation of DR 2-110(A)(2). By failing to respond to the inquiries of the local bar association, Bjorklund violated DR 1-102(A)(5), (6). Finally, Bjorklund's misrepresentation of the time and expenses involved in Jutson's case is a violation of DR 1-102(A)(4), (5), (6).

XI. *Count VIII: Jason Goldesberry Matter.*

A. *Factual findings.* Jason Goldesberry retained Bjorklund to represent him in a criminal case and in a probation revocation matter. He paid Bjorklund $2000 for the criminal defense and a $750 retainer for the probation revocation representation. Prior to a hearing scheduled for January 14, 2004, on the probation revocation, Goldesberry's father delivered to Bjorklund a letter of termination from Goldesberry. The letter included a request for Goldesberry's file and the return of any unused portion of the retainers. Bjorklund refused to provide any of the requested

items, stating the county attorney would not consent to his withdrawal because it was so close to the hearing. Goldesberry's father informed Bjorklund that they would be retaining another attorney, but Bjorklund still refused to turn over the file. Goldesberry subsequently hired Raymond Tinnian to represent him in these matters. Tinnian was unable to obtain Goldesberry's file from Bjorklund and so had to recreate it from other sources.

The Goldesberrys filed a complaint with the Johnson County Bar Association in February 2004, and after a hearing before the county disciplinary committee, the matter was referred to the state disciplinary board. The board filed a complaint with the Grievance Commission. In Bjorklund's response to this complaint, Bjorklund claimed Tinnian was to blame and Tinnian had absconded with Goldesberry's file. The commission did not believe this assertion, and neither do we.

In August 2004 Goldesberry filed a small claims action against Bjorklund, seeking the return of unearned client funds in the amount of $1250. Bjorklund did not attend the trial on this matter, and based upon the evidence presented, the magistrate entered judgment in favor of Goldesberry for the full amount requested.

B. *Ethical violations.* Bjorklund's conduct in this matter was similar to his dealings with Seivert, Fisher, and Jutson. As previously discussed, this behavior constituted a violation of DR 1-102(A)(4), (5), (6), DR 2-110(A)(2), (3) and DR 9-102(B)(3), (4).

XII. *Avoidance of Service.*

We also address the difficulties encountered by the board in attempting to serve Bjorklund in this matter, as Bjorklund's behavior reflects adversely on his fitness to practice law and consequently has been considered by this court in determining the appropriate discipline.

On September 17, 2003, the board sent a notice to Bjorklund regarding its investigation into Bjorklund's relationship with Praetorian Publishing. The notice was sent to Bjorklund's office by restricted certified mail. When this notice was returned unclaimed, the board hired ASAP Process Servers to serve the notice on Bjorklund at his residence. On December 19, 2003, the process server was at Bjorklund's residence when Bjorklund arrived home. When the process server attempted to serve the paper, Bjorklund denied his own identity and stated his name was "Jake." Subsequently, on January 10, 2004, the same process server, having obtained a photograph of Bjorklund, went to Bjorklund's office to serve the papers. Again, Bjorklund denied who he was, but the process server recognized him, dropped the papers, and announced that Bjorklund was served.

Similar problems were encountered by the board when it attempted to serve Bjorklund with the complaint filed by the Goldesberrys. The board again hired ASAP Process Servers. The process server staked out Bjorklund's house, but when Bjorklund saw the server's car as he came out of his house, he went back inside. When the process server moved his car, Bjorklund quickly left his residence. The server was later informed that Bjorklund had been seen at his office, so the server waited outside Bjorklund's office until Bjorklund left. As Bjorklund exited the building, the server stepped toward him to hand him the papers, and Bjorklund broke into a run. Although the process server pursued him on foot, recovering one of Bjorklund's shoes that came off during the chase, Bjorklund again eluded service. The process server returned to Bjorklund's office, and after waiting thirty minutes for Bjorklund to return, finally secured the papers between the office door and the door jam.

The board had comparable difficulties serving Bjorklund with the board's complaint filed with the Grievance Commission. The board contracted with ASAP Process Servers to serve the complaint and associated discovery requests on Bjorklund. The process server attempted on five separate occasions to serve Bjorklund with no success. On some of these occasions, Bjorklund purposefully evaded service, sometimes with the help of his employees. On September 12, 2005, the board requested the Johnson County Sheriff's office to serve the papers on Bjorklund. That office made five unsuccessful attempts to serve Bjorklund. Having exhausted avenues to personally serve Bjorklund, the board then mailed the complaint and accompanying papers to Bjorklund at his office via restricted certified mail. After three notices, the letter was returned to the board as unclaimed. Finally, the board served the papers by mailing them to Bjorklund at his office and to his post office box.

XIII. *Discipline.*

In deciding the appropriate sanction, we consider the following factors:

> "[T]he nature and extent of the respondent's ethical infractions, his fitness to continue practicing law, our obligation to protect the public from further harm by the respondent, the need to deter other attorneys from engaging in similar misconduct, our desire to maintain the reputation of the bar as a whole, and any aggravating or mitigating circumstances."

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Beckman*, 674 N.W.2d 129, 138 (Iowa 2004) (citation omitted). We are not bound by the commission's recommendation—here, disbarment—but we give it respectful consideration. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kallsen*, 670 N.W.2d 161, 164 (Iowa 2003).

Considering the factors set forth above leads to one conclusion: we must revoke Bjorklund's license to practice law in this state. Bjorklund's

ethical infractions are numerous, varied, and serious. *See Comm. on Prof'l Ethics & Conduct v. Hall,* 463 N.W.2d 30, 36 (Iowa 1990) (revoking respondent's license, noting "the number and variety of respondent's ethical violations support an enhanced sanction"). Moreover, he lies with reckless abandon. A lawyer who employs dishonesty as a routine component of his normal operating procedure clearly lacks the character required of members of the bar. *See Comm. on Prof'l Ethics & Conduct v. Crary,* 245 N.W.2d 298, 307 (Iowa 1976) (disbarring attorney who allowed his paramour to testify untruthfully at a deposition, noting "[t]he first requisite of an attorney is basic character"). Because "we harbor no hope that [Bjorklund] will understand and meet his ethical responsibilities in the future," only disbarment will protect the public from further exploitation by this attorney. *Beckman,* 674 N.W.2d at 139. While Bjorklund's ethical misconduct as charged in the complaint fully warrants the revocation of his license to practice law, we note his refusal to cooperate with the various disciplinary authorities and his blatant evasion of service of process only confirm the necessity of imposing the ultimate sanction.

Bjorklund's license is currently suspended for his failure to cooperate with the Client Security Commission's audit of his trust account. We now revoke his license to practice law in the State of Iowa. Costs are assessed against Bjorklund as provided in Iowa Court Rule 35.25(1).

**LICENSE REVOKED.**

All justices concur except Hecht and Appel, JJ., who take no part.